KINGMAN & COMPANY, Appellant, vs. WATSON, Respondent.

*October 28 — December 10, 1897.*

*Sale with warranty: Acceptance by continued use: Waiver.*

1. A written order by one party for the delivery to him of a steam threshing machine, containing provisions that the vendee shall make certain payments; that the machine shall be warranted of good materials and well made; that, if the machinery or any part fails to fill the warranty within ten days of the first use, written notice shall be given the vendor, and time, opportunity, and friendly aid be given to reach the machine and remedy any defects, and, if the defective machinery cannot then be made to fill the warranty, it may be returned and another be furnished on the same terms, or the money and notes given therefor be returned to the vendee and no further claim be made upon the vendor; that continued possession or use of the machine after the expiration of the time mentioned shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the vendee; and that the warranty shall be void in case the machine is not settled for when delivered, or the warranty is changed,— constitutes, when acted upon by the party receiving such order by the delivery of the machine ordered, a valid contract of sale, binding upon both parties according to its terms.

2. If the vendee under such contract, after he has discovered defects and verbally notified the vendor thereof, and the latter has made

an ineffectual attempt to remedy them, retains possession and continues to use the machine for a long period of time without returning or offering to return it to the vendor, he thereby accepts the machine and waives the defects. MARSHALL, J., dissenting, holds that the continued use which, by the contract, was to operate as an acceptance and a waiver of defects, was such use without having given notice of defects, but that such continued use, after notice of defects had been given, only cut off the right to return the property, and did not affect the remedy upon the warranty.

3. An agreement, made by an agent of the vendor on the tenth day allowed for the trial of the machine, that if the vendee, who then complains of defects, will give the notes as before agreed, the defects in the machinery shall be made good, so as to fill the warranty upon which it was sold, legally gave him nothing to which he was not entitled under the original contract, and did not supersede or modify that so as to eliminate the warranty or the provisions in regard to its waiver or fulfillment, except that it may have waived the giving of written notice or postponed it for a reasonable period. MARSHALL, J., dissenting, holds that the agreement by the agent was essentially a new contract, which the vendor ratified by acting upon it, and it had the effect to waive the written notice of defects and the condition as to the effect of continued use.

4. The vendee having by such contract the right to return the machine if unsatisfactory and let the vendor remedy the defects, his continued use thereof for a long period after he had discovered such defects, not for a further trial but merely for his own convenience, and without returning or offering to return it, was an acceptance thereof. MARSHALL, J., dissenting, holds that the contract did not make rescission the exclusive remedy, but the vendee might retain the machine and sue on the warranty.

APPEAL from a judgment of the circuit court for La Fayette county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

This action was brought to recover upon four promissory notes, in the aggregate for the sum of $1,800, given by the defendant to the plaintiff August 27, 1891, for the purchase of a steam threshing machine outfit, including a "Cyclone separator" and a steam engine, sold by the plaintiff to the defendant. The notes were secured by a chattel mortgage on the same property. The defendant answered that

the plaintiff warranted that all parts of the threshing-machine outfit were properly and perfectly made, and of good and perfect material, and would do good, perfect, and satisfactory work in threshing all kinds of small grain, and it was then worth, in cash, the sum of $1,800; that if it should be found by the defendant that the said outfit, or any part thereof, was defective or incomplete in any respect, or that it would not do good work as so represented, or was not of the value stated, or was not of material as represented by plaintiff, then the defendant might return or offer to return the same to the plaintiff or its agents, and the said plaintiff would thereupon return to this defendant any notes he might have given to plaintiff for such outfit, and any money paid plaintiff for the same; that relying on said warranty, and induced thereby, and believing said representations and warranty to be true, the defendant purchased said machine and outfit, and delivered to the plaintiff therefor the four notes described in the complaint. The defendant alleged that said representations and warranties were false, and were so known to be by the plaintiff when made; that upon the delivery of said machine and outfit the defendant proceeded to use the same, but it was imperfectly constructed, of imperfect and defective materials, and it would not and could not be made to do good work, and was of no use or value as a threshing outfit; that the defendant notified the plaintiff of such facts, and offered to return the same to the plaintiff, and at the plaintiff's request the defendant continued his efforts to make the said threshing outfit to do good work as warranted, but was utterly unable to do so; that thereupon, in the early fall of 1891, the defendant offered to return the same to the plaintiff, and demanded of the plaintiff his promissory notes and chattel mortgage, but the plaintiff absolutely refused to receive back said machine, etc., or to deliver up said notes, or any of them. The defendant also set up counterclaims (1) for moneys and time expended in

attempting to remedy the defects in said machine and to make it do good work, $400; (2) for damages sustained and business lost by the defendant by reason of said defective machinery, $1,000. The defendant demanded judgment that said notes and mortgage be surrendered and canceled, and for the damages he had so sustained. Plaintiff replied putting the said matters in issue.

It appeared at the trial before a jury that the threshing outfit had been taken by the plaintiff and sold under the chattel mortgage, the net proceeds of which sale were $607.85. The defendant, *Watson*, testified that, the tenth day he ran the machine, Mr. Hewitt, claiming to be the general agent and business manager of the plaintiff, came to get a settlement. He was asked as to what occurred between him and Hewitt at that time, which was objected to by the plaintiff, the defendant's counsel stating that he expected to prove that the defendant at that time was not satisfied with the machine; that it had proved defective in various respects; that he so informed Hewitt, the general agent, and that he refused to settle for the machine, or to receive or retain it; and that Mr. Hewitt agreed with him that, if he would sign these notes, if there were any defects about the machine the company would remedy them. But the evidence was objected to by the plaintiff's counsel, and the court referred to the conditions of the warranty in the written contract, which was afterwards put in evidence by the plaintiff, and it was claimed that whatever statements were made in regard to the matter were in the written contract.

The contract was in the form of an order, signed by the defendant and directed to the plaintiff, requesting it " to furnish or ship for the undersigned [the defendant] on or about the 26th day of August, 1891, in care of Sawdey & Erickson, the machinery and threshing outfit therein specified," and contained the following stipulations: " I, the undersigned, agree to receive the above subject to the conditions named

below, pay the freight and charges thereon from factory, and further agree to pay to your order on delivery the sum of $1,800, as follows [specifying the time and amounts for which the notes were to be given]. Notes to be dated from arrival of machine, to bear interest from date at eight per cent. per annum, to be given on your blanks, payable at Clarke Hawley & Co. Bank of Warren, Illinois; and I agree to give as security a chattel mortgage on the property purchased." "As a condition hereof, it is fully understood and agreed: (1) That this order is given subject to the acceptance of *Kingman & Co.*, and that no promises, whether of agent, employee, or attorney, in respect to the payments, security, or to the machinery named, will be considered binding, unless made in writing, and ratified by the home or branch office. (2) That title to the said goods shall not pass until settlement is concluded and accepted by *Kingman & Co.* . . . (4) The above articles are warranted to be of good material, well made, and, with proper management, capable of doing as good work as similar articles of other manufacturers. If said machine, or any part thereof, shall fail to fill the warranty within ten days of first use, written notice shall be given to *Kingman & Co.*, Peoria, Illinois, and to the party through whom the machinery was purchased, stating wherein it fails to fill the warranty, and *time, opportunity*, and friendly assistance given to reach the machine *and remedy any defects.* But if the purchasers fail to make it perform through improper management, or lack of proper appliances, or neglect to observe the printed or written directions, then the said purchasers are to pay all necessary expenses incurred. If the defective machinery cannot then be made to fill the warranty, it may be returned by the undersigned to the place where received, and another furnished on the same terms of warranty, or money and notes to the amount represented by the defective machine shall be returned, and no further claim be made on *Kingman & Co.*"

"Continued possession or use of the machine after *the expiration of time named above shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the undersigned,* who agree thereafter *to make no further claim under the warranty.* . . . This warranty to be invalid and void in case the machine is not settled for when delivered, or if this warranty is changed, whether by erasure, addition, or waiver. (5) It is also agreed and distinctly understood that in case I, for any reason, do not take said machinery, I will pay you, as damages, an amount equal to the freight from factory to place of delivery and back to factory; cancellation of order being wholly optional with you.   G. H. WATSON, Purchaser."

The court admitted the evidence, not for the purpose of showing a different warranty from that expressed in the writing, but that a new arrangement was made,— a new contract, perhaps.

The defendant testified that Mr. Hewitt and Mr. Erickson came to see him; that they talked quite a while, and defendant refused to give the notes, stating that they were not in accordance with the bargain made; that the machine was not what he was to have, and showed them different places where it had failed; that Mr. Hewitt said that if he would sign those papers that day, so that he could go back, *he would guarantee that everything should be made right,* and on those conditions he consented to run the machine and signed the notes. He was asked what he said to Hewitt about keeping the machine, and the court held that the circumstances under which the notes were given might be shown. He answered that he told Hewitt he would not keep it under the conditions,— would sign no paper; that he told him of the defects in the machine, specifying them as poor pumps and injector, and told him he could not keep water in the engine, with its leakage. The court allowed the witness to testify, against the plaintiff's objection, that it was after this statement was made by Mr. Hewitt that he

signed the notes, and Hewitt went away that same day. The court allowed the witness, against the plaintiff's objection, to proceed to state how the machine worked. He said that the machine did not work satisfactorily; cut the grain to pieces; took too much coal to run it; that the pump and injector did not perform their proper functions; they were a failure from the start. He testified in detail as to the manner in which the machine worked at different places where they threshed; that it cut oats badly, so that about one fourth of the oats were not good. He testified to writing a letter to Russell & Co., the manufacturers of the machine, in relation to the defects in it, and he had received, and offered in evidence, a letter from the plaintiff, dated June 16, 1892, which was to the effect that it would instruct Mr. T. B. Strossnider to call upon him the first time he was in the vicinity, and look the rig over carefully and give it necessary attention. He said that Strossnider called on him soon after the date of the letter,— perhaps in two weeks; that he told him of the defects, and offered to fire up the engine and set up the machine, so that he could see it run; that he said it was not necessary, and that he knew nothing of the machine or of the business; that he did not do anything to remedy any of the defects, except to send a new water gauge, etc.; that the cylinder bars in the machine were only three quarters of an inch thick, and the teeth were hard, and would snap off, or the pressure on the outer ends of the teeth kept turning them back and cutting in the bar till they could not tighten them.

Other testimony was given, against the plaintiff's objection, as to the manner in which the machine worked; that it worked worse in 1892 than in 1891; that at the end of the season in 1892 it was put in a shed. He testified that after the receipt of the letter of June, 1892, from the plaintiff, it never offered to remedy any of the defects in the machine; that the machine was operated properly, with ordi-

nary skill and care. Considerable other testimony was given
on the part of the defendant as to the manner in which the
machine worked. The defendant testified that it leaked
from the time he started it, through the whole season; that
the tank filled up with lime after a while; that the defects
he specified to Hewitt when he gave the notes were the
pump and cylinder and concave, and the leakage in the
boiler. The defendant, *Watson,* against the objection of the
plaintiff, was allowed to testify that, if the machine had
been in all respects as represented when he bought it, it
would have been worth at that time $1,800, the price he
was to have paid for it; that in the condition, in all respects,
that it was in fact in, it was worth something,— probably
$600.

On the part of the plaintiff, in rebuttal, Byron Hewitt
testified that *Mr. Watson* signed the notes and chattel mort-
gage; that the machine was working good, and doing good
work, and he made no objections to signing the notes. He
testified that he had no authority to waive any of the con-
ditions of the warranty, or any of the terms of the contract,
and that he did not do so. Erickson testified, on the part
of the plaintiff, to the execution of the order given by the
defendant for the threshing outfit, which was directed to
the plaintiff, and signed by the defendant only. He further
testified that *Watson* read over the order before he signed
it, and he gave him a copy or duplicate of it; that he was
present when the defendant settled with Hewitt by giving
the notes and chattel mortgage; that the defendant was
finding more or less fault with the machine; that *Mr. Wat-
son* made complaint, and showed the defects to Mr. Hewitt,
and he said, "what was not right, we will make right;"
that that was about all he could recollect, of any conse-
quence; that he thought Hewitt referred to the order given
by *Watson* for the outfit and warranty contained therein, at
the time he made the statement referred to. Considerable

testimony was given in rebuttal in regard to the alleged defects in the threshing outfit, and tending to show that it was not properly managed. It appeared that defendant retained the threshing outfit until it was taken from him under the chattel mortgage, by the sheriff, July 26, 1893.

The court charged the jury, at plaintiff's request, that "the defendant having purchased the threshing outfit subject to a warranty as to the capabilities of the machine with proper care and management, the burden of proof was on him to show a breach of the warranty, and a compliance by him with the conditions of the warranty on his part to be performed." The plaintiff's counsel asked the court to instruct the jury that "it was a matter for them, from all the evidence, to determine whether the outfit did or did not comply with the warranty; and the continued use of the machine for two seasons, and preparation to use it a third season, might be considered by them on the question of acceptance." The court gave said instruction to the word "of," in the last line thereof, and refused to give the remainder of the same. Further, that "if the sale was absolute, as claimed by the plaintiff, and there was a breach of the written warranty of the machine, and if defendant was dissatisfied with the outfit after testing it and discovering its alleged defects, he should have returned or offered to return it, and unreasonable delay or use of it after this time would make him liable on the notes." Also, that "if, after a trial of the threshing outfit, he determined he would return it as unsatisfactory, he had no further right to use it, and such use would be an acceptance of the outfit, and fatal to his right to return it." Also, that "the continued use of the machine after knowledge of defects may be deemed an acceptance, and the use of the machine for two years failed to show a compliance on the part of the defendant with the terms of the warranty."

The court refused each of these instructions, and submit-

ted to the jury the following questions, to be answered by them as and for a special verdict, and which were answered as follows: " (1) Did Byron Hewitt, the plaintiff's agent, as an inducement to the defendant to settle for the threshing outfit the plaintiff had sold him, and to give these notes in suit for $1,800 principal, therefor, before the notes were signed, agree with and promise the defendant that *all defects in said outfit would be made good, and it be made to fulfill the warranty upon which it was sold?* Ans. Yes. (2) What was the value of said threshing outfit at the 'time the defendant bought it, if it were then as it was warranted to be? Ans. $1,800. (3) Was said threshing outfit, when it was delivered to the defendant, and at the time he gave his notes for it, of good material, well made, and, with proper management, capable of doing as good work as similar threshing outfits of other manufacturers? Ans. No. (4) If to the last question you answer 'No,' answer this question: What was the actual value of said threshing outfit as it was, in all its parts, at the time it was delivered to the plaintiff? Ans. $600. (5) What credits, as payments, is the defendant entitled to, upon what, under this verdict, shall be adjudged to have been the value of the threshing outfit at the time it was delivered to the defendant? Ans. $18, as of date of notes, and $700, proceeds of chattel mortgage sale, less $69.60, expenses of such sale, and also the interest which is indorsed upon the notes in evidence as paid."

The plaintiff moved the court for judgment notwithstanding the special verdict, and to grant a new trial on account of the aforesaid rulings, and the motion was denied. Judgment was thereupon given in favor of the defendant and against the plaintiff, dismissing the plaintiff's complaint on the merits, and for costs, from which the plaintiff appealed.

For the appellant there was a brief by *Conley & Conley* and *Spensley & McIlhon,* and oral argument by *Calvert Spensley.* They argued, *inter alia,* that it was error to ad-

Kingman & Co. vs. Watson.

mit evidence of a verbal change or modification of the contract. *Plano Mfg. Co. v. Root,* 3 N. Dak. 165; *Fahey v. Esterly Mach. Co.* id. 220; *Wendall v. Osborne & Co.* 63 Iowa, 99; *Nichols, Shepherd & Co. v. Larkin,* 79 Mo. 264. In order to rescind the contract of sale for a breach of warranty the defendants should have offered to return the machine, and afterward have ceased to use or exercise any acts of ownership over it. *Cream City Glass Co. v. Friedlander,* 84 Wis. 53, 56; *Churchill v. Price,* 44 id. 540; *Philadelphia Whiting Co. v. Detroit W. L. Works,* 58 Mich. 29; *Boothby v. Scales,* 27 Wis. 636; *Walter A. Wood Mowing & Reaping Mach. Co. v. Calvert,* 89 id. 640. Use of the machine after knowledge of the defects was an acceptance. *Palmer v. Banfield,* 86 Wis. 441, 447; *J. I. Case Threshing Mach. Co. v. Vennum,* 4 Dak. 92. The contract required a written notice of defects, and a verbal notice to the agent was insufficient. *Webster v. Phœnix Ins. Co.* 36 Wis. 67; *Abbott v. Johnson,* 47 id. 239; *Nichols, Shepard & Co. v. Hail,* 4 Neb. 210; *Miller v. Nichols, Shepard & Co.* 5 id. 478; *Pitt's Sons' Mfg. Co. v. Spitsnogle,* 54 Iowa, 36; *Weise v. Birdsall & Co.* 35 Mo. App. 229.

For the respondent there was a brief by *Orton & Osborn,* and oral argument by *P. A. Orton.*

PINNEY, J. The determination of this action depends upon the operation, force, and effect to be given to the written contract between the parties, and what effect, if any, is to be accorded to the subsequent oral agreement found by the jury to have been made on the 10th day after delivery and use of the machine by the defendant, as stated in the special verdict, namely, that, as inducement to the defendant to settle for the threshing outfit the plaintiff had sold him, and to give the notes in suit therefor, before the notes were signed the plaintiff company agreed to and promised the defendant " that all defects in said outfit would be made good,

and it be made to fulfill *the warranty upon which it was sold.*" The warranty upon which it was sold and delivered was clearly the one stated in the written contract. This appears to have been a valid contract, binding upon both parties. The defendant had signed it, and was therefore bound by its terms and conditions. The plaintiff was bound in like manner, for the contract had been signed at its request and accepted by it. *Vilas v. Dickinson,* 13 Wis. 488. Every agreement may be reduced to an acceptance of an offer. The agreement is perfect as soon as the offer is accepted. 3 Am. & Eng. Ency. of Law, 841.

It is familiar law that if one person agrees to do a particular thing, provided another shall do a certain other thing, performance by the latter supplies the lack of a previous promise to do the thing, and entitles him to enforce the agreement of which his act was the consideration. *Beckwith v. Brackett,* 97 N. Y. 52; *Smith v. Rector, etc., of St. Philip's Church,* 107 N. Y. 618; *L'Amoreux v. Gould,* 7 N. Y. 349; *Low v. Foss,* 121 Mass. 531. Thus, the delivery by the plaintiff of the threshing-machine outfit to the defendant, pursuant to his order therefor, bound the latter to perform the terms of the order, and the acceptance of the defendant's order by the plaintiff in like manner bound it to comply with the stipulations therein to be performed on its part. That there was a valid contract of sale to the effect stated in the order, binding on both parties, cannot admit of question. The property sold was delivered to and received by the defendant, and it was settled for, under the requirements of the contract, by the giving of the notes and chattel mortgage, so that the title to the property sold passed at once to the defendant, pursuant to the terms of the agreement of sale; and it was the *written* contract of sale that was thus executed on the part of the defendant. There was no other sale or contract of sale than this, nor any other warranty than the one contained in that contract.

The evidence clearly shows it, and the special verdict emphatically affirms the fact that the alleged subsequent agreement was to the effect that "*defects in said outfit would be made good, and it be made to fill the warranty upon which it was sold.*" The defendant was bound by his contract to give the notes at the time he signed them. The promise made by the plaintiff when he signed the notes legally gave the defendant nothing to which he was not entitled before the promise was. made, and was simply an assurance that the plaintiff would make good the already existing warranty on its part. Neither party did or agreed to do anything which he was not already bound to do before, and no new consideration, term, or condition was added to the existing contract. It seems impossible to say that any new contract, or alteration of the existing one, was made. It cannot be said, therefore, that the conditions and stipulations of the original contract were superseded, dispensed with, or eliminated by the parol promise found by the verdict. It is settled that the terms and conditions of a written agreement not required to be in writing may subsequently be varied or qualified by the parties by a new agreement not reduced to writing. *Brown v. Everhard,* 52 Wis. 207. The rule is thus stated in *Goss v. Lord Nugent,* 5 Barn. & Adol. 58–65: "After the agreement has been reduced into writing, it is competent to the parties, at any time before breach of it, by a new contract not in writing, either altogether to waive, dissolve, or annul the former agreement, or in any manner to add to or subtract from or vary or qualify the terms of it, and thus to make a new contract, which is to be proved *partly* by the written agreement, and *partly* by the subsequent verbal terms ingrafted upon what will be thus left of the written agreement." *McNish v. Reynolds,* 95 Pa. St. 485.

The contract provided that: "If said machinery, or any part thereof, shall fail to fill the warranty within ten days after first use, written notice shall be given to the plaintiff,

Kingman & Co. vs. Watson.

. . . stating where it fails to fulfill the warranty, and *time, opportunity,* and friendly assistance given to reach the machine *and remedy any defects.* . . . If the defective machinery cannot then be made to fill the warranty, it may be returned to the place where received, and another furnished on the same terms of warranty," etc. On the last of the ten days named, the settlement was made, and the notes and chattel mortgage were given.

It seems plain that the defendant elected to rely on the warranty in the contract, and his ability to effect a return of the property pursuant to its terms. The effect of what thus took place between the parties on the tenth day would· be, at least, to waive the giving of written notice of defects, etc., or to postpone it for a reasonable period. No reason is perceived why the parties might not thus waive, for a reasonable period of time, the giving of such notice, and be bound by the consequences, when actually given. This did not operate to eliminate from the written contract the warranty already contained, nor the provisions whereby it might be waived, or conclusive evidence furnished that it had been fulfilled. The contract between the parties still consisted of the written matter, with the verbal additions found by the jury, which did not, we think, either in substance or effect, in the least change or modify the original agreement. As said in · *Goss v. Lord Nugent, supra,* the contract is to be proved partly by the written agreement, and partly by the subsequent promise found by the jury, and it still remained a question of construction as to its legal force and effect. Thus far, there is nothing showing, or tending to show, that either the warranty, or the provision in regard to its waiver or fulfillment, was waived or eliminated. The parol promise is wholly consistent with these provisions, and therefore they must be held as still operative.

After the defendant had thus elected to keep the threshing outfit, and continued to use and operate it, there is no·

evidence whatever to show that he offered at any time to return it to the plaintiff, although the testimony shows that it wholly failed to comply with the warranty. He gave no written notice of defects, but specified on one or two occasions, verbally, various deficiencies and imperfections in the machine. The plaintiff acted, it seems, upon these verbal complaints, and thereby waived the requirement that they should be in writing; and the evidence tends to show that it attempted to remedy them, but failed to do so. Nevertheless the defendant continued in the possession, use, and operation of the machine until, finally, in June of the next year, in response to the promise contained in a letter on the subject of about that date, one Strossnider called on him, on behalf of the plaintiff, in about two weeks, when he informed him of the defects, and offered to fire up the machine so that he could see it run, but he did not do anything to remedy any of the defects, except to send a new water gauge, etc., and after his visit the plaintiff never offered to remedy any of the defects in the machine. Certainly the defendant had by this time become fully conscious of its alleged defects and imperfections, and that it had failed to fulfill the waranty given at the time of the sale.

The contract provides, in substance, that "if said machinery, or any part thereof, shall fail to fill the warranty within ten days after first use," written notice was to be given to the plaintiff, stating wherein it failed to fill the warranty, and *time, opportunity,* and friendly assistance given to reach the machine *and remedy any of the defects.* From which it is evident that it was intended that the trial period of the machine might, and would, probably, exceed the ten days named in the contract. And it further provides that, "if the defective machinery cannot then be made to fill the warranty, it may be returned to the place where received, and another furnished on the same terms of warranty," etc. And it was further stipulated that "continued possession or use

of the machine after the expiration *of time named above* shall be conclusive evidence that the warranty is fulfilled to the satisfaction of the undersigned, who agree thereafter to make no further claim under the warranty." The context shows, we think, that the *trial period* by the contract was not limited to ten days merely, but might, as observed, continue much longer. It is certain, at least, that the time had arrived when it was the duty of the defendant to return the machine, or keep it and make it finally his own, and that the failure to so return it, and continued use, would defeat such right to return it, and be an election on his part to retain the machine upon the terms upon which it had been sold. The provision of the contract on that subject is decisive, and we see nothing in the testimony to show that it was ever abrogated, waived, or rescinded. Here had been continued possession and use of the machine for nearly three years, and, as provided in the contract, we feel compelled to hold that it was conclusive evidence that the warranty had been fulfilled to the satisfaction of the purchaser, and that he was precluded thereafter from making any further claim under the warranty. There is no hardship in this view of the case. Two courses were open to the defendant, and his election determined his rights: He might elect to rescind the contract, and return the machine. This he did not do, or offer to do. Or he might have placed himself in a position to avail himself of his warranty, and recover in an action founded thereon, or by recoupment of his damages from the contract price. He could not elect to withhold payment of notes, and keep and use the machine, as he did, without waiving the warranty. The course the defendant pursued was inequitable, and unwarranted by the contract; and, whatever the consequences may be, they are certainly of his own choice. He was in no position to justify the continued use and possession of the machine, and at the same time withhold the purchase price.

Kingman & Co. vs. Watson.

The rule laid down in *Palmer v. Banfield*, 86 Wis. 441, and other similar cases, is, we think, applicable to the facts of this case: That where the vendee of a machine has the right to return it, either because of defects constituting a breach of warranty or under a condition of the sale that he might return it if dissatisfied, but after testing it and discovering the defects, or determining that he was not satisfied, he continued to use it, not to make a further test, but merely for the purpose of his own convenience, such use constitutes an acceptance of the machine, and the right to return it is thereby lost. He could not use or deal with the property in any way inconsistent with its rejection, if he proposed to insist on his right to reject it. *Cream City Glass Co. v. Friedlander*, 84 Wis. 53; *Churchill v. Price*, 44 Wis. 540; Benj. Sales (6th ed.), § 703. There is no ground upon which to contend that the use and retention of the machine in the manner stated was for the purpose of trial, or testing it so as to ascertain defects therein. All claim of any necessity to retain it for that purpose, the testimony shows, had long since ceased to exist, and it had become absolutely certain that it did not fill or satisfy the warranty. *Walter A. Wood M. & R. M. Co. v. Calvert*, 89 Wis. 640; *J. I. Case Threshing Machine Co. v. Vennum*, 4 Dak. 94. The uncontradicted evidence clearly shows that the defendant, by continued possession and use of the threshing outfit after it was clearly established that it did not comply with the warranty, lost the right to make the defense upon which he is insisting in this action, and the court should have directed a verdict accordingly. There is no ground for any contention that he ever offered to return it after he made the settlement under the contract of sale, and executed the notes and chattel mortgage.

The court properly charged the jury, at the plaintiff's request, that "the defendant having purchased the threshing outfit subject to a warranty as to capabilities of the machine,

with proper care and management, the burden of proof was on him to show a breach of the warranty, and a compliance by him with the conditions of the warranty on his part to be performed;" and erroneously, we think, refused to instruct the jury "that if the sale was absolute and there was a breach of warranty of the machine, and if defendant was dissatisfied with the outfit after testing it and discovering its alleged defects, he should have returned or offered to return it, and unreasonable delay or use of it after this time would make him liable on the notes;" and further, if, "after a trial of the threshing outfit, he determined he would return it as unsatisfactory, he had no further right to use it, and such use would be an acceptance of the outfit, and fatal to his right to return;" also, "that the continued use of the machine after knowledge of the defects might be deemed an acceptance, and the use of the machine for two years failed to show a compliance on the part of the defendant with the terms of the warranty."

Our conclusion, upon the uncontradicted evidence and the facts found by the jury, is that the liability of the defendant upon the notes in suit was made to turn upon an immaterial question. It appearing that the defendant had lost his right to insist on a warranty contained in the written contract, the evidence offered to show the damages he claimed to have sustained should have been excluded. It follows from these views that the judgment of the circuit court must be reversed, and the cause remanded for a new trial.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.

MARSHALL, J. I do not understand that any findings of fact contained in the verdict of the jury are disturbed on this appeal. They found, among other things, that the agent, at the time he obtained the notes of the defendant, sued on,

agreed that, if defendant would give such notes, all the defects in the outfit would be remedied. So we may properly say that by the undisputed evidence and the verdict of the jury, considering that the word "plaintiff" was obviously intended for "defendant" in the fourth finding, the facts of the case are:

(1) That plaintiff warranted the outfit as to material, construction, and capability for work.

(2) That defendant was required, within ten days after the first use, to notify plaintiff, and the party through whom the property was purchased, of defects, if any were found.

(3) That the contract further provided as follows: "If the defective machinery cannot then be made to fill the warranty, *it may be returned and another be furnished on the same warranty, or money and notes be returned in full settlement.*"

(4) That there was a further covenant, in substance, that continued use and possession of the machine after the expiration of the ten days should constitute an acceptance of the machine as fulfilling the warranty.

(5) That the machine did not fulfill the warranty, but no written notice was given of the fact within the ten days required, or otherwise.

(6) That on or about the last day of the ten days, and before the time expired for giving notice of defects, plaintiff's agent called on defendant for a settlement and was then notified fully of the breach of warranty complained of, and thereafter he induced the defendant to give the notes on the faith of a promise that the plaintiff should remedy all defects.

(7) That the notice of the defects as complained of to the agent was conveyed to the plaintiff, and it acted upon it and endeavored to remedy them, but did not succeed.

(8) That defendant made frequent complaint, which reached the plaintiff and was acted on by it, and the defend-

ant never accepted the machine as fulfilling the warranty, unless his use of the machine under the facts stated constituted such acceptance.

(9) That with full notice of the promise made the defendant plaintiff retained the notes and sought to enforce them.

(10) That defendant never returned the outfit, or offered to return it after the notes were given, but kept it, protesting, however, that it was not according to the contract; that it was worth, when defendant received it, $600; that plaintiff received from a sale of the machine on chattel mortgage a sufficient sum, with $18 paid at the time the notes were given, to more than offset the purchase price of the machine, less defendant's damages for breach of warranty.

The evidence and contract showed, further, that the contract, by its terms, provided for the giving of the notes at the time of the delivery of the machine; but that the machine was delivered and defendant had it on trial for about ten days before the notes were either given or requested; that the written contract provided that, if the machine was delivered without the giving of the notes at the time of delivery, the special warranty contained in the contract should not be binding upon the plaintiff. Now, what is the law applicable to these facts?

Admitting that the agreement made by the agent was no more than an affirmation of the contract of warranty contained in the written contract, it at least had the effect of waiving the written notice of defects and also the condition that continued use after the period of ten days after the first use should be conclusive on the question of acceptance, leaving the warranty in force, stripped of the condition of waiver by use and failure to give written notice of defects. That it was so binding seems to be beyond reasonable controversy upon two grounds:

First. Though the agent, under the terms of the contract, had no power to bind plaintiff by such a waiver, it is just

as true that when it, with notice of the agreement, retained the notes obtained on the faith of such agreement, it ratified its agent's conduct, and the contract became as much that of the plaintiff as if it had been originally authorized by it. That is a doctrine that needs no elaboration here. It needs but to be stated to show its clear application to the facts of this case. In the recent case of *McDermott v. Jackson, ante,* p. 64, the rule of law was discussed at some length and a large number of authorities were cited to the effect that a person cannot retain the avails of an unauthorized contract, made for his benefit by another assuming to act as his agent, and repudiate the responsibilities of such contract, and any attempt to do so, with full knowledge of the facts, constitutes a ratification of the unauthorized act and creates a liability on the part of such person to the same extent as if such contract were originally authorized.

Second. But it is said that the so-called contract with the agent was not a contract in fact, because it did not add anything to the original contract; that it was only affirmatory of it. To my mind such reasoning proceeds upon an entire misapprehension of what the original contract was, and there is evidence in the statement of my brethren which leads to that conclusion. They say that "the defendant was bound by his contract to give the notes at the time he signed them; neither party did, or agreed to do, anything which he was not bound to do before." Against this statement stands the indisputable fact that the provision of the written contract for the giving of the notes on delivery of the machine had been waived by a delivery of the machine to defendant on trial, and allowing him to use it for nearly ten days before he either gave, or was requested to give, the notes, so he was not bound to give them when he did so, unless the machine, by trial, had proven to be according to the representations made. The contract expressly provided as follows: "This warranty to be invalid and void in case the

machine has not been settled for when delivered; or if this warranty is changed, whether by erasure, addition, or waiver." This condition of the contract appears to have been entirely overlooked. It shows conclusively that it was contemplated that a delivery of the machine might be made on trial, and, in case of such delivery, that the provisions in regard to warranty were not to apply 'at all; neither were they to apply in case of any waiver; so, when the agent of plaintiff applied for a settlement, he obtained something which defendant was not obliged to give, because the machine was not satisfactory at that time. He obtained the notes by making the agreement that all the defects should be remedied and the machine made as good as represented. That was essentially a new contract under the circumstances, and whether one which the agent had a right to make or not, it became binding upon the plaintiff by ratification.

But suppose the so-called new contract only amounted to an affirmance of the old contract. Then, obviously, inasmuch as the notes were obtained on the strength of the promise to remedy the defects in the machine, and on the last day for giving written notice of defects, the retention of the notes constituted a waiver of any written notice of defects, whether any attempt was made afterwards to remedy such defects or not. But when the plaintiff acted upon the notice of defects given to the agent, the waiver was put beyond all question, not only according to the most familiar principles of estoppel by conduct, but according to the universal authority in similar cases.

My brethren recognize the doctrine of waiver to some extent, as before stated, but in my opinion fail to see that, when a provision is thus out of a contract, it leaves the contract the same as if the provision had never been there at all. If a verbal notice of defects was given here, and acted on in lieu of a written notice, that constituted a waiver of the special method provided for, and entirely satisfied the

condition of the contract in that regard. To hold that keeping the machine thereafter constituted conclusive evidence of acceptance of it as fulfilling the warranty,— which is the effect of the reasoning of my brethren,— injects into the contract something which the parties did not put there. The only fair and reasonable construction of the contract is that, within ten days after the first use of the machine, if it did not prove satisfactory, written proof of the defects was required to be given, and that continued use of the property after the expiration of such ten days, *without the giving of such notice*, should be conclusive evidence of acceptance; and such has been the interpretation of such contracts over and over again, as we will endeavor to show.

In *Sandwich Mfg. Co. v. Feary*, 40 Neb. 226, the warranty was of the quality of a harvester, coupled with a condition that, if the machine proved defective, written notice thereof should be given to the agent and sufficient time allowed to remedy the defects, and that if it could not then be made to do good work it should be returned and the notes and money given back in full settlement. The machine proved defective. Verbal notice thereof was given. After waiting a reasonable length of time for the vendor to try to make it comply with the warranty, and failing so to do, the purchaser rescinded the sale. The case turned principally on whether the failure to give written notice at the time and in the manner required was fatal to the right of rescission, and rendered the defendant liable on his notes for the full amount, notwithstanding the breach of warranty. On that the court said, in effect, that, assuming that the obligation to give a written notice under the contract was absolute, the company waived it when the agent was verbally notified on Wednesday evening that the machine did not work, and he thereupon agreed to furnish a man to put it in order.

To the same effect is *Davis' Sons v. Butrick*, 68 Iowa, 94, where the contract was for the sale of a threshing machine,

the same in all essential particulars as the one in suit.  The machine failed to do good work; verbal notice was given to a traveling agent, which notice reached the vendor and it sent a man to fix the machine.  Suit was thereafter brought on one of the notes, and the case turned on whether the failure to give a written notice to the agents of whom the machine was received, and to John S. Davis & Sons, of Davenport, Iowa, as required by the contract, waived the warranty.  The court held that, if the plaintiffs intended to require a strict compliance with the contract, they should have stood upon its terms and awaited the written notice before acting; that their sending the agent to remedy the defects, upon receiving notice otherwise, showed clearly a waiver of the contract method.  With like effect is *Davis' Sons v. Robinson*, 67 Iowa, 355, where the court said, in regard to a provision like that in question: "It was for the benefit of the vendors; when they acted without receiving information in the manner agreed upon, they could not afterwards claim that it was not valid and formal or in the manner they intended to receive notice under the contract."  The court distinguished the case from *Wendall v. Osborne & Co.* 63 Iowa, 99, where there was a ten-day limit for giving notice after the first use of the machine, as in this case, and no notice was given of any kind within such time.

Further, on the same subject, is *Massachusetts L. & T. Co. v. Welch*, 47 Minn. 183.  That was a threshing-machine case very much like the one in suit.  The written notice was not given, but there was a verbal notice within the time required, which was acted on, and protest frequently made thereafter; there was continued use of the machine; it was used nineteen and one-half days the first fall and started up the second before suit was brought on the notes, when the purchasers counterclaimed for damages.  The circumstances of that case and this one are strikingly similar. The court held that there was a complete waiver of the

terms of the contract in regard to notice, and sustained defendant's recovery of damages for breach of warranty. Other cases on the same subject, each of which is quite as conclusive as those particularly referred to, are: *Sandwich Mfg. Co. v. Trindle*, 71 Iowa, 600; *Flatt v. D. M. Osborne & Co.* 33 Minn. 98; *Nichols, Shepard & Co. v. Knowles*, 31 Minn. 489; *Nichols, Shepard & Co. v. Root*, 35 Minn. 363; *Minnesota Thresher Mfg. Co. v. Hanson*, 3 N. Dak. 81; *Aultman-Taylor Co. v. Frazier* (Kan. App.), 47 Pac. Rep. 156; and there are many others decided in the courts of the northwestern states, where similar contracts have been in most frequent use during recent years.

From the foregoing it would seem that if a question can be said to be firmly settled on well-established principles, by judicial authority, the one under consideration has been. I should not hesitate in the absence of precedents, but relying wholly on well-recognized principles of waiver or estoppel by conduct, to express the opinion, and be guided by it in the administration of the remedies between parties under contracts of sale with conditional warranties calling for notice of defects by a particular method, that notice given and acted upon in any other way constitutes a waiver of such method and substitutes that adopted in lieu of it, leaving the warranty entirely freed from the condition. But if there were doubt about it, the reasoning and decisions of so many eminent courts that have had to deal with the subject, all speaking with one voice, would certainly resolve it in favor of the position here maintained.

It is said that the contract provides that continued use of the machine after the expiration of a reasonable time after discovering the defects, even if notice was given, was conclusive on the defendant; "that he could not keep the machine, refuse to pay the notes, and still have his remedy on the warranty." Does that not overlook the well-established principle that a sale with warranty carries with it an elec-

tion of remedies, so that the vendee, before accepting the property as equal to that contracted for, may rescind by returning it within a reasonable time and recover back the purchase-money, *or he may keep it without such acceptance, and when sued on the notes counterclaim for damages for breach of the warranty; or, if he has paid for it, he may sue and recover his damages; that if he loses his right to rescind by not returning or offering to return the property within a reasonable time, or a time agreed upon, that does not affect his other remedies, unless the right to rescind is made exclusive by the terms of the contract?* Certainly, we are not to understand that refusal to pay the notes affects the remedy for damages in the absence of some contract to that effect; and there is none here. The usual remedy in such cases is to set up the breach of warranty and counterclaim for damages in the suit for the purchase money. It is said: "Two courses were open to defendant: *He might have elected to rescind and return the machine. That, he did not do or offer to do. He might have placed himself in a position to recover his damages.*" Query: What did he fail to do in that respect? We are answered that he failed to pay the notes. It is so well settled that that circumstance would not affect recoupment, that we shall not stop to discuss it. Further, it is said, he kept the machine. It is not perceived how that can affect recoupment. Certainly, if he had returned it and the sale had been rescinded, the remedy by recoupment would have been gone. Having given notice of the defects and continually protested that the machine did not fulfill the warranty, the mere fact that he kept the machine could not affect recoupment, unless by the contract the defendant stipulated for a rescission of it as his only remedy for a breach of the warranty. In that case, obviously, there could be no recoupment of damages, unless there was an offer and refusal of rescission, and a subsequent election on the part of the defendant to retain the machine when sued on the

notes, instead of standing on the rescission. *Palmer v. Ban-field*, 86 Wis. 441, is cited. In that case the only question was whether the vendee, by his conduct, had forfeited his right to rescind. No question was raised as to whether the loss of the remedy of rescission would affect the remedy by way of recoupment. The theory upon which the decision here rests, we must conclude, is that the remedy by rescission was exclusive, and that the failure on the part of the defendant to place himself in a situation to resort to that remedy left him without any remedy at all.

The construction adopted by the court appears to me to reverse the familiar principle that if a provision in a contract, inserted by a person for his own benefit, will admit of two constructions, that one should be adopted most favorable to the other party, and that other principle, that provisions of contracts stipulating away common-law rights and remedies are always to be strictly construed against forfeitures. Forfeitures are never favored in the law, and all contracts to that end are to be scrutinized and construed most strictly against parties claiming them. That applies here. In *Massachusetts L. & T. Co. v. Welch*, 47 Minn. 183, in construing a similar contract, the court held that the conditions should be strictly construed, and that, giving it such a construction, the retention of the machine did not forfeit the right to a recoupment of damages for breach of warranty. Many cases may be found to the effect that, where parties expressly stipulate that in case of a breach of the warranty *the sale shall be rescinded*, that remedy is exclusive. Says REED, J., in *King v. Towsley*, 64 Iowa, 75: "It is competent for the parties to provide by contract that a particular course shall be pursued on a breach of warranty; that is, they may limit the remedy to one of rescission. When they do it that remedy is exclusive, but in the absence of such a limitation the vendee has his election of remedies." The contract there did not give the purchaser any option, but bound

him in case of a breach of warranty to a recission as his only relief. The language was as follows: "If the machine fails to comply with the warranty, and the vendor's agent is not able to remedy the defect, the sale shall be rescinded." See, also, *Rowell v. Oleson*, 32 Minn. 288, to the same effect. But in *Aultman, Miller & Co. v. Theirer*, 34 Iowa, 272, where the agreement was to the effect that, if the vendor failed to make the machine work after notice of defects, it would be taken back, and the machine was kept two years, the vendee protesting the while that it was not as warranted, the court held that the remedy by recoupment of damages was not waived by the contract. Likewise is *McCormick & Bro. v. Dunville*, 36 Iowa, 645, where the stipulation was to receive the machine back. The court held that such language did not constitute a limitation of the vendee's remedies; that in the absence of an express undertaking to return the machine in case of a breach, the vendee could retain it and recover damages for breach of the warranty.

A case quite analogous to the one under consideration is *Love v. Ross*, 89 Iowa, 400, where the language was that the vendee "can return the property." But the court said, in effect, that such language left it to the vendee to return or not as he saw fit; that if the property was not as warranted he had a right to rescind and recover back the purchase price, or retain the property and recoup his damages; that the only change the contract made was that if he did return the property he was bound to receive other property in its place if tendered upon the terms stated in the contract. The vendee contracted away the absolute right to rescind. He had the right to retain the property and claim damages for breach of the warranty, nevertheless. The facts of the case fit this, so far as the legal principles are concerned, most perfectly. So, in *Fitzpatrick v. D. M. Osborne & Co.* 50 Minn. 261, where there was a promise made by the agent who took the notes, as in this case, the

court held that, though the agreement was that the vendee might return the machine for breach of the warranty and be released from paying for it, that was not exclusive; that he yet might keep it and recoup his damages for the breach. Again, on the same subject, in *Tunell v. D. M. Osborne & Co.* 31 Minn. 343, the contract provided that notice of defects should be given and an opportunity for remedying the same allowed, and that, if it could not be made to do good work, defective parts should be replaced, "or the machine taken back and payment of the money or notes returned; that keeping the machine during harvest, whether kept in use or not, without giving notice as required, shall be deemed conclusive evidence that the machine fills the warranty." Notice of defects was given, and ample opportunity for remedying the same, but the machine was not made to do good work. Nevertheless the vendee kept the machine and used it several seasons, before the action was brought for damages, protesting, however, that it was not as warranted. The chief defense relied upon was that the exclusive remedy under the contract, for breach of the warranty, was to return the property and rescind the sale, and that keeping the same was conclusive evidence against the purchaser. This again appears to touch the case under discussion at every point. In deciding this subject the court, by DICKINSON, J., said, in effect, that although the vendor promised the vendee to receive back the machine if it was returned, the contract did not obligate the latter to return the property and rescind the sale; that it did not provide that the sale should be rescinded upon the contingency specified therein, nor express an intention of the parties that the vendee should have but the remedy by rescission of the sale for breach of the warranty. Therefore, the vendee might insist upon the performance of the promise of the vendor to replace the defective property, or he might waive it and recover damages for breach of the warranty. Fur-

ther, on the same subject, are *Mandel v. Buttles,* 21 Minn. 391; *Perrine v. Serrell,* 30 N. J. Law, 454; and *Seigworth v. Leffel,* 76 Pa. St. 476.

Now it would seem, without the aid of judicial authority, that the reasonable construction of the contract in question is, that in case of an election to return the machine, instead of keeping it and claiming damages for breach of the warranty, it should then be at the option of the vendor whether to rescind the contract and return the purchase-money notes and any purchase money paid on the contract, or furnish a new machine on like conditions and warranty as the first; that the condition operates as a limitation only on the right of rescission. The precise wording of the contract is as follows: "*If the defective machinery cannot then be made to fill the warranty it may be returned to the same place where received, and another received on the same terms of warranty, or money and notes, to the amount represented by the defective machine, returned, and no further claim made on Kingman & Co.*" There is an entire absence of language indicating an intention to limit the remedy to that of a rescission.

I have no apology to make for the length of this opinion. The questions involved are of great importance to a large number of people who deal in machinery under contracts of a similar character. It seems that, to let the case go beyond reach with a judicial announcement to my mind out of harmony with elementary principles and the judicial authority to which I have referred, without stating reasons for dissent therefrom, would come short of judicial duty.

Now to recapitulate, I hold that the rule to be applied to the contract in question is one of strict construction in favor of the purchaser; that where a sale is made with warranty, coupled with a condition that written notice of defects shall be given within a particular time and in a particular way, a notice given within the time and in a different way, if acted on by the seller, constitutes a waiver of the strict perform-

Kingman & Co. vs. Watson.

ance of the condition; that where the warranty is coupled with a condition for notice of defects within a particular time and in a particular way, and that continued use of the machine after that time shall be considered conclusive evidence of acceptance, the continued use contemplated is use after the time for giving notice of defects, without having given such notice; that where notice has been given either in the mode prescribed, or a mode accepted in lieu of it, continued use thereafter is entirely unaffected by the provision of the contract that continued use shall be conclusive evidence that the machine fulfills the warranty; that then the ordinary principles apply, that the contract may be rescinded within a reasonable time by a return, or offer to return, the property, or the purchaser can elect to keep the property and recoup his damages when sued for the purchase price, or, if he has paid the price, may bring his action to recover his damages; that his remedy by way of damages for breach of warranty is not waived by the contract, unless the language in that regard is clear and explicit; that if the language will admit of two constructions, one that makes the remedy of rescision exclusive and one that does not, the latter must prevail.

Applying the foregoing to this case, there was a clear waiver of strict performance of the contract in respect to notice of defects, not only according to the verdict of the jury, but according to the undisputed evidence. The remedy by rescission of the sale for the breach of the covenants of warranty was not exclusive; the continued use only cut off the right to return the machine and receive another in its place, or the purchase-money notes, at the option of the seller. The jury found that there was a breach of the warranty and assessed the damages sustained thereby. That, together with other matters referred to, found by the jury or established conclusively by the evidence, made a clear case for the rendition of the judgment appealed from, and it should be affirmed.