[No. 7492.  Decided April 13, 1909.]

EDWIN T. COMAN et al., Appellants, v. H. C. PETERS et al., Respondents.[1]

MORTGAGES—RIGHT TO FORECLOSE—DEFAULT IN INTEREST—MATURITY OF DEBT—FAILURE TO ELECT. A clause in a mortgage providing that, in the case of the nonpayment of any interest when due, the whole principal and interest shall immediately become due and payable and that the mortgage may be foreclosed for the whole sum, is for the benefit of the mortgagee, and is waived by failure of the mortgagee to elect to consider the whole sum due prior to due tender of the interest.

APPEAL—RIGHT TO ALLEGE ERROR—ISSUES NOT DETERMINED—MORTGAGES—FORECLOSURE—DEPOSITS. Upon the dismissal of an action to foreclose a mortgage because prematurely brought, the plaintiff cannot complain of an order requiring the payment of money voluntarily deposited by a defendant for a partial release, the right to which was not determined or in dispute, and which order did not affect the lien of the mortgage.

Appeal from a judgment of the superior court for Adams county, Zent, J., entered February 13, 1908, in favor of the defendants, dismissing on the merits an action to foreclose a mortgage. Affirmed.

[1]Reported in 100 Pac. 1002.

· *W. H. Winfree,* for appellants.

*Edward J. Cannon* and *Arthur B. Lee,* for respondent Portland & Seattle Railway Company.

*S. H. Steele,* for respondents Peters et al., and Palouse Irrigation & Power Co.

PARKER, J.—This is a suit to foreclose a mortgage, and the principal issue involved is whether the debt secured became due before the commencement of the suit. The conclusion we arrive at on this question renders it unnecessary to review the many minor facts, and arguments thereon, presented by learned counsel for the parties, all of which, even if resolved most favorably to appellants, could not avail them or change the result.

The facts, briefly stated, are as follows: On July 15, 1906, the defendants Peters and wife made and delivered to the First Savings & Trust Bank, of Whitman county, three notes for $10,170, each, payable in two, three, and four years after date, without grace, at 12 o'clock noon, with an interest clause inserted therein as follows: "With interest thereon at the rate of 7 per cent per annum from date hereof until paid, interest payable annually;" and to secure payment thereof, on the same day executed and delivered to the bank a mortgage upon certain lands, which mortgage contained the following clause:

"In case any principal or interest as above provided in said notes shall become due and remain unpaid, then the whole of the principal and interest of said notes and all moneys secured hereby shall immediately become due and payable, and this mortgage may be foreclosed for the whole of such moneys."

There is considerable in the record and arguments of counsel dealing with the question whether the acts and communications of the parties amounted to a tender of the interest on July 15, 1907, being the day on which the first annual installment thereof became due. We pass this, however, as

unnecessary for our consideration. The next morning, July 16, 1907, the Colfax National Bank, in behalf of the payors of the notes, being authorized so to do, tendered to the First Savings & Trust Bank, which was then still the owner of the notes, the sum of $2,135.70 in gold coin, being the amount of interest falling due the day previous. This tender has since been kept good. It was refused by the First Savings & Trust Bank, because, as it claimed, the whole indebtedness had become due by virtue of the provisions of the mortgage above quoted and failure to pay the interest the day previous. Just what was said at this time indicating an intention on the part of the payee to claim the whole debt as then due by reason of failure to pay the interest on the day previous is not clear. But it is certain that up to the moment the tender was made, and the gold coin actually produced therefor, there had not been any notice, or even intimation by the payee bank, to the payors, or to the bank which was acting as their agent, that the interest money would be refused, or that it (payee) elected to declare the whole debt due. A few days later this suit was commenced to foreclose the mortgage, and has been prosecuted upon the theory that the entire debt secured thereby became due upon failure to pay the interest accruing July 15, 1907, on that day. Peters and wife conveyed the land to the Irrigation and Power Company, the Railway Company acquired a right of way over the land, and the notes and mortgages were assigned to the plaintiffs and appellants, all of which accounts for the present parties to the suit. The suit was dismissed by the trial court upon the ground the debt had not matured, and plaintiffs appealed.

The principal contention of the attorneys for the appellants, and in our opinion the one upon which this whole controversy turns, is that the language of the mortgage, not containing any words of option indicating an election necessary by the payee to mature the whole debt, and apparently unqualifiedly providing that upon default all moneys secured "shall immediately become due and payable," has the effect

of maturing the whole debt upon default, without any affirmative act or any claim on the part of the payee.

This court has heretofore decided the principle here involved against this contention, and has made no distinction between a case where there are words of option in the mortgage or agreement and cases where there are none, so far as the duty of the payee is concerned in electing to declare the whole debt due in order to effect the maturity of the debt; and has held that in neither case would the whole debt become due upon default without some affirmative action indicating an election on the part of the payee.

In the case of *First Nat. Bank of Snohomish v. Parker*, 28 Wash. 234, 68 Pac. 756, 92 Am. St. 828, there was a provision in the mortgage to the effect that, upon default of the payment of the interest or any part when due, the right of foreclosure should immediately accrue. The default apparently occurred more than six years before the commencement of the suit, and the statute of limitations was set up as a defense by the maker of the note and mortgage. The court there held that the general rule as to the effect of such stipulation, "is that such default must be claimed by the mortgagee or it is waived. It is for the benefit of the mortgagee, and cannot be taken advantage of by the mortgagor;" holding that the debt did not accrue upon the mere default so as to start the statute of limitations running, and of course, if it did not accrue for that purpose, it did not accrue so as to give the holder a right of action at that time.

In the case of *White v. Krutz*, 37 Wash. 34, 79 Pac. 495, there was a provision even farther reaching than the one before us. It was contained in a subsequent written agreement extending the time of payments of a mortgage, and provided that, if default should be made in any of such payments, the indebtedness represented by the original note and mortgage should "immediately become due and payable without notice." Here, again, it was held by this court, that the debt did not mature upon the mere happening of the de-

fault so as to start the running of the statute of limitations.

In the case of *Zeimantz v. Blake*, 39 Wash. 6, 80 Pac. 822, this court had under consideration a contract for the purchase of land in which time was made the essence thereof, and upon default in payments the purchaser was to forfeit his rights, apparently without any affirmative act of the seller, and it was there held that while the seller could declare the forfeiture and cut off the purchaser's rights, it required some affirmative act on his part to do so, and if he remained passive until the purchaser made tender of payment, he was obliged to accept and perform his part of the contract. Upon the doctrine of these decisions, this court recently decided the case of *Weinberg v. Naher*, 51 Wash. 591, 99 Pac. 736, in which case, however, the words, "at the option of the holder of the note," was incorporated in the agreement.

Thus it is plain that this court is fully committed to the doctrine—and we think rightfully so, that mere default in payment does not mature the whole debt—whether there be words of option in the agreement or not. Such a provision hastening the date of maturity of the whole debt is for the benefit of the payee, and if he does not manifest any intention to claim it, before tender is actually made, there is in law no default such as will cause the maturity of the debt before the regular time provided in the agreement. We are of the opinion that the suit was prematurely commenced, and that the same was rightfully dismissed by the trial court on that account.

The respondent Railway Company filed with its answer to the complaint a cross bill, seeking to require the plaintiffs to release the lien of their mortgage upon the portion of the land covered by the right of way it had acquired by agreement with the Irrigation & Power Company; at the same time deposited in court $9,000, which it claimed was more than sufficient to pay plaintiffs and entitle it to a release from them of their mortgage lien upon its right of way, under the terms of the mortgage; and prayed that the court determine

what portion thereof plaintiffs were entitled to for such release and decree accordingly. The court never adjudicated this matter between the plaintiffs and any of the defendants, but did, before trial, make an order at the instance of the Irrigation & Power Company directing the clerk of the court to pay to it $5,000 of this money; the making of which order, it is claimed by appellants, is error which they strenuously argue should be corrected and the order set aside by this court.

There does not seem to have been any controversy between the Irrigation Company and the Railway Company as to their respective rights to this money. Indeed, it seems to have been a part of the compensation agreed upon to be paid by the Railway Company to the Irrigation Company in acquiring the former's right of way, and by their common consent deposited in court to the end that so much of it as became necessary be paid to plaintiffs for release of the mortgage upon the right of way, when the court should adjudicate that question as against plaintiffs. But this branch of the case never was tried or adjudicated by the court. Indeed, it appears by the very terms of the final decree dismissing the cause that the court expressly refused to try or pass upon that matter, which was in harmony with plaintiffs' contentions all through the case. The court, by its final decree, simply dismissed the case, because the debt sued upon had not matured, and hence plaintiffs had no cause of action. We are not able to see how this order for the payment of the $5,000 to the Irrigation Company affected plaintiffs' rights, or the lien of their mortgage on the land covered by the railway's right of way, in the least; hence, they could not complain of it. Plaintiffs made no prayer for affirmative relief other than was strictly incidental to their right to foreclose at this time, and no affirmative relief was granted against them other than the judgment for costs and the cancellation of their *lis pendens* filed in the auditor's office.

We conclude that the disposition of the cause by the trial court should be affirmed, and it is so ordered.

MOUNT, CROW, DUNBAR, GOSE, FULLERTON, and MORRIS, JJ., concur.

CHADWICK, J., took no part.