[No. 11930.   Department Two.   August 11, 1914.]

WALTER A. KEENE, *Respondent*, v. M. P. ZINDORF *et al.*, *Appellants.*[1]

LANDLORD AND TENANT—LEASE—TERMINATION—NOTICE OF FORFEITURE—NECESSITY. The rights of a lessee to exercise an option to purchase are not terminated through default in the payment of rent, the last installment of which was due April 1, under a lease providing that, upon nonpayment of the rent or any portion thereof, or within thirty days thereafter, the lessors could elect to forfeit the lease, and that the lessee "waives notice of termination of the lease and all demand for payment of rent or possession," and that the lessee had the option of extending the lease for a period of forty years from September 1, 1913, the end of the original term, at a yearly rental of one dollar, and could elect to purchase the property at any time during the period of extension, provided the election to extend the lease was made, whereupon the lessors would deed the property for a consideration of $100, where the lessee, before the expiration of the term, though after the final installment of rent became due, tendered sufficient money to pay the rent and also $100 as the purchase price of the property, at the same time notifying the lessors that he elected to extend the lease and purchase the property, it further appearing that the lessors had never declared the lease at an end, nor by any overt act indicated an intention to claim a forfeiture for failure to pay the rent when due; since the forfeiture clause in the lease would not automatically terminate the purchaser's rights upon default, in the absence of some declaration or claim of forfeiture on the part of the lessors.

SAME—LEASE—EXTENSION—OPTION TO PURCHASE—TIME FOR EXERCISE. In such case, the lessee having preserved his rights under the contract by tender of the final installment of rent before declaration or claim of forfeiture by the lessors, his notice of election to ex-

[1]Reported in 142 Pac. 484.

tend the lease and purchase the property entitled him to a deed therefor.

SAME—LEASE—EXTENSION—OPTION TO PURCHASE—TENDER—SUFFI-CIENCY. Where the lessee paid the final installment of rent a considerable time after it was due, but preserved his rights under the lease on account of failure of the lessors to declare a timely forfeiture for nonpayment of rent, he is not bound, when tendering the rent, to include therein interest from the time it became due, where several previous payments of rent were made a considerable time after they were due, and were accepted without demand for interest, the parties apparently had no thought of interest or a demand therefor when the tender was made, and no objection was made to the amount thereof, and the lessee's tender, deposited in court for the benefit of the lessors, was more than sufficient to cover interest which might be claimed.

SAME—RENT—TIME FOR PAYMENT. · Under a lease providing for an extension thereof for a period of 40 years, at the option of the lessee, at a yearly rental of one dollar and the payment of taxes, it was not necessary for the lessee, on electing to extend the lease, to tender the first year's rent, since, in the absence of an agreement to pay in advance, rent is payable at the end of each rental period.

ALIENS—OWNERSHIP OF LAND—PARTIES ENTITLED TO OBJECT. Grantees of an owner who leased the property to an alien, a Japanese citizen, cannot resist claims to the property in a suit for specific performance brought by an assignee of the lessee, an American citizen, on the constitutional ground that ownership of lands by aliens is prohibited in this state.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered February 13, 1914, upon findings in favor of the plaintiff, in an action for specific performance, tried to the court. Affirmed.

*John W. Roberts* and *George L. Spirk*, for appellants.

*Walter A. Keene, pro se*, respondent.

PARKER, J.—The plaintiff seeks to enforce conveyance by defendants of certain real property, in Seattle, in compliance with a lease containing an option to purchase the property, given by Anna M. Zindorf, the defendants' grantor, to Saburo Hisamidzu, consul for the Japanese Empire at Seattle, to whose rights the defendants have succeeded by assignment.

A trial resulted in judgment requiring the defendants to execute and deliver to the plaintiff a good and sufficient quitclaim deed for the property; and, upon their neglect or refusal so to do, appointing the clerk of the superior court a commissioner to execute and deliver to plaintiff such a deed; also directing the clerk of the superior court to pay to the defendants the sum of $601, tendered and paid into the court by the plaintiff for the use of the defendants as the balance of the rent and purchase price of the property. From this disposition of the cause, the defendants have appealed.

There is no dispute worthy of serious consideration concerning the facts which we regard as determinative of the rights of the parties. The lease containing the option to purchase, in so far as we are here concerned with its terms, reads as follows:

"This indenture, made this 19th day of August, 1903, between Anna M. Zindorf, a feme sole of county of King and state of Washington, party of the first part, and Saburo Hisamidzu, Consul of the Japanese Empire at Seattle, Washington, party of the second part, witnesseth:

"That the said party of the first part, in consideration of the covenants of the said party of the second part hereinafter set forth, does by these presents lease and demise to said party of the second part the following described property, to wit: . . .

"To have and to hold the same to the said party of the second part from the first day of September, 1903, to the first day of September, 1913.

"And the said party of the second part, in consideration of the leasing the premises as above set forth, covenants and agrees with the party of the first part to pay to the said party of the first part, as rent for the same, the sum of twelve thousand ($12,000) dollars, payable as follows, to wit: One hundred ($100) dollars on September first, 1903, and six hundred ($600) dollars on October first, 1903, and six hundred ($600) dollars on each and every first day of October and the first day of April thereafter up to and including the first day of October, 1912, and five hundred ($500) dollars on the first day of April, 1913.

". . . upon the nonpayment of the whole or any portion of the said rent, or within thirty (30) days thereafter, the said party of the first part may, at her election, either distrain for said rent due, or declare this lease at an end and recover possession as if the same were held by forcible detainer; the said party of the second part hereby waiving any notice of such election, or any demand for the possession of said premises . . .

"The party of the second part waives notice of the termination of this lease under any of its provisions, and all demand for payment of rent or possession. . . .

"The party of the first part also agrees to pay all state, county and municipal taxes on said property hereby leased and all charges for local improvements now assessed against the same, but the party of the second part will pay all charges and assessments for local improvements which may hereafter be assessed against the same . . .

"It is further agreed that the party of the second part and his assigns or successor in interest shall have the right at his election to extend said lease for a period of forty (40) years from September 1st, 1913, at a yearly rental of one ($1) dollar and the payment of all taxes during the period of such extension. Said election may be exercised at any time on or before September first, 1913. . . .

"It is further agreed that should the party of the second part, or his assigns or successor in interest, desire to purchase said property at any time after September first, 1913, and during the period of extension of this lease, (provided the party of the second part has elected to so extend the same) the party of the first part will deed the same to him by a good and sufficient quit-claim deed for a consideration of one hundred dollars . . .

"It is also agreed that on the first day of September, 1913, if all payments of lease money as herein contemplated shall have been made, all buildings, out-houses, improvements and movable property of every kind and character situated on said real estate herein leased shall be and become the absolute property of the party of the second part and may be removed by him, his assigns or successor in interest, within a reasonable time thereafter . . .

"The covenants herein shall extend to and be binding upon the heirs, executors, administrators, assigns and successors in interest of the parties to this lease."

On September 23, 1908, Anna M. Zindorf, by deed duly executed, conveyed the property to appellants, by which conveyance they became the owners thereof, subject to the rights of respondent and his predecessors in interest under the lease and option to purchase. On October 4, 1911, Hisamidzu, the lessee, duly sold and assigned to Seiichi Takahashi the lease and option to purchase. On the 22d day of August, 1913, Takahashi duly sold and assigned to the respondent the lease and option to purchase. Hisamidzu, the original lessee, and his successors in interest under the lease and option to purchase, have kept and performed all the terms and conditions on their part to be performed, including the payment of $1,447 of local assessment charges levied against the property, and the payment of $11,500 of the agreed rental up until the first day of April, 1913, when the final installment of rent of $500 became due.

In August, 1913, before the expiration of the original ten-year term specified in the lease, respondent, the then owner of the lease and option to purchase, tendered to appellants $500 in gold coin as and for the final payment of the rent due for the original ten-year period; also tendered to appellants the further sum of $100 in gold coin as and for the purchase price of the property, and served upon each of them a written notice, notifying them, in substance, that he had become the owner by assignment of the lease and option to purchase; that he elected to have the lease extended for the further period of forty years as therein provided, and that he elected to purchase the property under the option given by the terms of the lease, and demanded that they execute to him a deed therefor. Appellants refused to accept these tenders, or either of them, and refused to convey the property as demanded. Neither these tenders nor the execution of the deed were refused by appellants because of the insufficiency of the amount

of the tender, but evidently because appellants regarded respondent's rights under the lease and option to purchase as being terminated by virtue of his default in payment of the last rent installment and also because they regarded the lease and option as void on account of the original lessee being an alien. Up to the time of the actual making of this tender, neither appellants nor their grantor had ever in any manner declared the rights of respondent or his predecessors under the lease and option to purchase as forfeited or at an end. In the language of the trial court in its findings, they had "never, at any time, made any declaration of forfeiture to anyone, and never, at any time, did any overt act of any kind whatsoever in the way of forfeiting said lease, or indicating that a forfeiture thereof had been declared by them, or that they intended to declare a forfeiture thereof or had forfeited said lease." There is no room for controversy as to this fact.

Takahashi has, at all times, remained in possession of the property under respondent since the assignment of the lease and option to purchase to respondent, and no attempt has been made on the part of appellants to interfere in the least with the full enjoyment of the property by respondent. Respondent claims to have tendered $1 to appellants together with his other tenders, as and for one year's rental of the property, immediately following the original ten-year period, being rental for the first year of the extended term. There being some conflict in the evidence touching the making of this tender, we shall not assume that it was actually made, since, as we proceed, we think such fact will be found to be immaterial. Respondent has kept his tender good by depositing in court at the time of the commencement of this action, the sum of $680, being more than sufficient for that purpose.

The principal contention of counsel for appellants seems to be that the lease, and all of the respondent's rights thereunder as lessee, came to an end upon default of payment of the rent, before the tender by him of the last installment of

$500, due upon the rent of the original ten-year period, and that respondent thereby lost his right to purchase the property under the option contained in the lease. It may be conceded that respondent's right to purchase the property is dependent upon the continuation of the lease and his rights thereunder as lessee until the end of the original ten-year term and an effective election on his part to extend the lease for the additional term provided for therein, since his right to purchase the property seems to be confined to the "period of extension of this lease" provided it be effectually extended; though he could elect to purchase, give appellants notice thereof, and tender to them the $100 therefor at any time during the original ten-year period.

We have seen that, a short time before the expiration of the original ten-year period, respondent tendered to appellants the $500 due as the last installment of the rent for the original ten-year period; that he elected to extend the lease, and gave appellants due notice thereof; and that he elected to purchase the property, gave appellants due notice thereof, and tendered the $100 on the purchase price. All of this, it is true, was done some time after the final $500 rent installment became due; but it is also true that, up to the time of the tender, appellants did not "declare this lease at an end" by any overt act whatsoever; nor was the enjoyment of the property by respondent sought to be interfered with. If respondent's rights were at an end as lessee at the time of, and prior to, these tenders and election made by him, it is because the lease and all of respondent's rights thereunder automatically terminated upon his default of the payment of the $500 rent when it became due, without any declaration or claim of forfeiture whatever on the part of appellants. Such seems, in its last analysis, to be the contention of appellants' counsel. So far as the option to purchase contained in the lease is concerned, we may concede that it would automatically expire if not exercised within the original ten-year term of the lease or its effective extension; but the question

of the automatic termination of the lease is quite another problem; hence we recur to that, the real question in this branch of the case.

Counsel for appellants rely upon, as the automatic terminating provisions of the lease upon default in the payment of rent, the following provisions thereof:

". . . upon the nonpayment of the whole or any portion of the said rent, or within thirty (30) days thereafter, the said party of the first part may, at her election, either distrain for said rent due, or declare this lease at an end and recover possession as if the same were held by forcible detainer; the said party of the second part hereby waiving any notice of such election, or any demand for the possession of said premises . . .

"The party of the second part waives notice of the termination of this lease under any of its provisions, and all demand for payment of rent or possession."

Viewed superficially, these provisions may seem far reaching in the direction claimed by counsel, but we are constrained to hold that they go no further than to deprive respondent, as lessee, of the privilege of previous notice of an intention on the part of appellants to put an end to the lease by so declaring. Forfeiture provisions in contracts, other than mere options, are generally held to be for the benefit of one of the parties, and not to operate in favor of such party unless he takes some affirmative action claiming his rights thereunder. At the time of the tender, the termination of this lease was still to be accomplished by the declaration of appellants, and the mere fact that they had the privilege of so declaring did not terminate the lease. That was a right they could exercise or not as they chose, and the fact that they might exercise such right without notice to respondent, does not change the fact that, until it is exercised in some overt manner, the lease will still live. In *Lane v. Brooks*, 120 Ill. App. 501, there was involved a lease containing a forfeiture clause as follows:

"If default be made in the payment of the rent above reserved or any part thereof, or in any of the covenants of said lease by the lessee, it shall be lawful for the lessor, at any time thereafter, at his election, *without notice or demand of rent,* to declare said term ended 'and to re-enter said demised premises or any part thereof, either with or without process of law . . ."

Answering the contention that default in payment of rent under such lease terminated the lessee's right without any declaration or claim of forfeiture made on the part of the lessor, the court very pertinently observed:

"Under the provisions of this lease the nonpayment of rent did not put an end to the lease or to the term thereby created. The lease gave to the landlord a continuing option at his election to declare the term ended in such case. But he could not make this election and put an end to the term by any secret resolve of his own mind, any more than can one to whom an offer or proposal is made accept the same and make a contract by mere 'mental 'assent' to such offer or proposal."

This view finds support in the following authorities: *Wills v. Manufacturers' Natural Gas Co.,* 130 Pa. St. 222, 18 Atl. 721, 5 L. R. A. 603; *Hartford Wheel Club v. Travelers Ins. Co.,* 78 Conn. 355, 62 Atl. 207; *Williams v. Beach Pirates Chemical Engine Co.,* 73 N. J. L. 446, 63 Atl. 990; *Blank v. Independent Ice Co.,* 153 Iowa 241, 133 N. W. 344; 2 Tiffany, Landlord & Tenant, p. 1402; 1 Underhill, Landlord & Tenant, § 394. In the text of 24 Cyc. 1357, it is said:

"Inasmuch as it is optional with the lessor whether to avail himself of the breach of a covenant by declaring a forfeiture, it follows that if the lessor desires to forfeit he must manifest his intent by some clear and unequivocal act during the term."

Upon this principle, this court, in *Zeimantz v. Blake,* 39 Wash. 6, 80 Pac. 822, held that a forfeiture clause making time of payment the essence of a land purchase contract would not automatically terminate the purchaser's rights

upon default, in the absence of some affirmative claim of forfeiture on the part of the seller. In so holding, the court observed:

"It is said that, in order to make a case, the respondents must prove that all of the payments due under the contract up to the time of the final tender were paid or tendered at the time they fell due, as time was made of the essence of the contract, and a forfeiture occurred as of course on default of any payment. We cannot so construe the contract. This clause in the contract did not, of itself, forfeit the contract in equity simply because a payment was not made immediately on its falling due. Undoubtedly the party agreeing to make the sale could declare a forfeiture, and cut off the right of the other party to make the payments, but it required some affirmative action on his part. If he remained passive until the other party made tender of payment, he was obligated to accept it and to perform his part of the contract."

We are of the opinion that respondent's rights under the lease had not terminated at the time he tendered to appellants the $500, as and for the final installment of rent due for the original ten-year term, though that tender was made some considerable time after it became due, since appellants had never declared the lease at an end, nor by any overt act indicated their intention to claim a forfeiture of the lessee's rights thereunder. Such tender, therefore, had all the effect in preserving respondent's rights as lessee as if made on the day the final installment became due. *Moran v. Lavell*, 32 R. I. 338, 79 Atl. 818, Ann. Cas. 1912 D. 1007; *Lewis v. St. Louis*, 69 Mo. 595; 24 Cyc. 1353. Our own decisions are in harmony with this view, though we have none involving directly such forfeiture clauses in lease contracts. *First Nat. Bank of Snohomish v. Parker*, 28 Wash. 234, 68 Pac. 756, 92 Am. St. 828; *White v. Krutz*, 37 Wash. 34, 79 Pac. 495; *Zeimantz v. Blake, supra; Weinberg v. Naher*, 51 Wash. 591, 99 Pac. 736, 22 L. R. A. (N. S.) 956; *Coman v. Peters*, 52 Wash. 574, 100 Pac. 1002. The lease, and respondent's rights as lessee thereunder, being preserved by the

tender of the final installment of $500 upon the rent of the original ten-year period before declaration of forfeiture by appellants, it follows that his election to extend the lease and purchase the property under the option contained in the lease, and his tender of $100 on the purchase price, were effectual and entitled him to a deed for the property.

It is contended, however, that respondent's tenders were, in certain respects, defective and not such as preserved his right either as lessee or his right to purchase under the option. It is insisted that the tender of the $500 as the final payment due upon the rent for the ten-year period was insufficient in that it was made some few months after the time it became due, and was, therefore, deficient because not accompanied with an amount to cover interest thereon from the time it became due. Assuming that appellants were entitled to interest had they demanded it, it would have amounted to approximately $12. Looking back over the history of the payments made from time to time during the ten-year period, we find that, on several occasions, they were made some considerable time after they became due, and were accepted by appellants and their grantor without any demand for interest, and apparently without any thought of interest on the part of respondent or his predecessors in interest. All parties manifestly had no thought of interest or a demand therefor at the time of the tender of the $500, as the final rent installment. Appellants have resisted plaintiff's claims not because of insufficiency of tender so far as its amount was concerned, but have assumed an attitude clearly manifesting that they would not have accepted a tender in any amount. When respondent commenced this action, he not only kept his tender good in the amount he had previously tendered, but he kept it good by depositing in court that amount and an additional sum for the benefit of appellants more than sufficient to cover the interest which might be claimed by appellants upon the deferred rent installment. Appellants cannot now invoke the insufficiency of the tender so far as its amount is concerned.

*Ziemantz v. Blake, supra; Livieratos v. Commonwealth Security Co.,* 57 Wash. 376, 106 Pac. 1125.

It is also insisted that there was no tender of the $1 in connection with respondent's election to extend the lease beyond the original ten-year term. Counsel's theory seems to be that, to extend the lease beyond the original ten-year term, required not only an election so to do on the part of respondent, but also a tender of the first year's rent amounting to $1. We have noticed that there was some dispute in the evidence as to whether such tender had been made, and therefore we regard it as not having been made. Counsel's contention finds a complete answer in the fact that the annual rent of $1 per year for the extended term is not payable in advance. The law seems to be well settled that, in the absence of an agreement to pay in advance, rent is payable at the end of each rental period. Such rental period being one year, under the extended term, manifestly no rent in any event would become due until the end of the first year of the extended term. Hence, it was wholly unnecessary for respondent to make any tender of payment of rent when he elected to extend the lease. 18 Am. & Eng. Ency. Law (2d ed.), 270. The notice given to appellants by respondent was sufficient, of itself, to secure that right to respondent. Indeed, the only purpose of respondent in extending the lease was evidently to remove all question as to his right to purchase, since that right seems to depend on there being a valid extension, and that right being claimed and tender of purchase price being made at the beginning of the new term, no rent would ever become due thereon.

Hisamidzu, the original lessee, and also Takahashi, his assignee, are not citizens of the United States, nor have they declared their intention to become such, but are citizens of Japan. This fact, counsel for appellants contend, rendered the lease and option void, in that it was in violation of the provisions of our constitution, that "the ownership of lands by aliens . . . is prohibited in this state . . ." That

this Japanese's lessee and his assignee are within the prohibited class under our constitution may be conceded. Counsel rely upon the decisions of this court in *State ex rel. Winston v. Morrison*, 18 Wash. 664, 52 Pac. 228; *State ex rel Winston v. Hudson Land Co.*, 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430, and *State ex rel. Morrell v. Superior Court*, 33 Wash. 542, 74 Pac. 686. The *Morrison* and *Hudson Land Co.* cases were prosecuted by the state directly against alien owners, in which cases the constitutional provision was given full force. The *Morrell* case was an eminent domain proceeding wherein an alien corporation, that is, alien in effect because of the ownership of its stock being in aliens, sought to acquire land from a citizen by condemnation. In that case, there was no attempt on the part of the defendants in the eminent domain proceeding to avoid any contract or conveyance theretofore made by him; hence there was no element of estoppel whatever available against him. He was not seeking to acquire back that which he had voluntarily conveyed away to an alien, but he was simply resisting the claims of an alien corporation which, under this provision of the constitution, was held not to possess the power of eminent domain. In *Abrams v. State*, 45 Wash. 327, 88 Pac. 327, 122 Am. St. 914, there was an attempt by a plaintiff to recover possession of, and quiet title to, certain real estate which he had conveyed to the defendant, an alien. After a somewhat critical and extended review of the authorities touching the right of the plaintiff to avoid his deed upon this ground, Justice Crow, speaking for the court, said:

"Under our constitution and the authorities above cited, we hold the rule in this state to be that the deed of the appellant Abrams entirely divested him of any title to the real estate; that he is in no position to question its validity; that his alien grantee took what was known at common law as a defeasible estate, void as against the state only, and which might escheat to the state upon office found."

In that decision, and also in *State ex rel. Atkinson v. World Real Estate Commercial Co.*, 46 Wash. 104, 89 Pac.

471, it was held that even the right of the state to interfere because of such ownership ceased to exist when a citizen successor to such alien owner acquired the property by inheritance or conveyance from such alien owner. This holding also finds support in the earlier cases of *Oregon Mortgage Co. v. Carstens*, 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841, and *Goon Gan v. Richardson*, 16 Wash. 373, 47 Pac. 762. We are of the opinion that appellants are in no position to resist, upon the constitutional ground urged, the claim of respondent to the property; because the state alone can complain upon that ground, and, because the interest in the property sought to be enforced is now in respondent, who is concededly a citizen of the United States.

While we conclude that the failure to tender interest with the tender of $500 for the final installment of rent did not render that tender ineffectual in saving respondent's rights as lessee, nevertheless, appellants are now entitled to be paid $12 for such interest out of the money deposited by respondent in court for the use of appellants. We direct that the judgment be corrected accordingly.

Subject to this correction, the judgment is affirmed. Respondent will recover costs in this court.

CROW, C. J., MOUNT, MORRIS, and FULLERTON, JJ., concur.