[No. 23531. Department One. May 2, 1932.]

LOUIS SVARZ, *Appellant,* v. ANNA C. DUNLAP,
*Respondent.*[1]

*Carkeek, McDonald & Harris,* for appellant.
*Hartman & Hartman* and *W. H. Beatty,* for respondent.

HERMAN, J.—Plaintiff is a licensed architect, practicing his profession in the city of Seattle. Defendant is a widow, who has had experience as a business woman. Plaintiff sued defendant upon a contract to recover compensation for plans and specifications of an apartment house which was never built. The cause was tried before the court without a jury, and resulted in judgment for the defendant. From that judgment, plaintiff has appealed.

This is the third appeal in connection with this cause, the others being reported in *Svarz v. Dunlap,* 134 Wash. 555, 235 Pac. 801, and *Svarz v. Dunlap,* 149 Wash. 663, 271 Pac. 893.

The evidence shows that, in 1917, appellant, as architect, had planned and supervised the construc-

[1]Reported in 10 P. (2d) 975.

tion of an apartment house known as the Winchester. Respondent was impressed with that apartment house. She first met appellant in January, 1922. She was brought to his office by a mutual friend. The Winchester was a four story building with thirty-one apartments. A sketch of a proposed apartment house somewhat similar to the Winchester was prepared by appellant, who testified he showed it to respondent. She insists that he called her on the telephone and said that he had the sketch. At any rate, they both agree that appellant told respondent the cost would be over $60,000 for such a building.

This sketch showed but thirty-one apartments. Shortly thereafter, a second sketch, providing for a building with more apartments, was completed by appellant. He estimated the cost of a building such as that contemplated by the second sketch, at about $70,-000. Mrs. Dunlap, after seeing the second sketch, left Seattle for California.

In September, 1922, further negotiations between appellant and respondent occurred. During October, 1922, respondent directed appellant to proceed with the working plans for a proposed building different from that contemplated by the first two sketches. Appellant maintains that the estimated cost of the building which was contemplated at this time was $92,000. He told respondent that a survey of her lot would be necessary, and she directed him to have a survey made. This was done. In November, 1922, respondent and appellant entered into the following contract:

"Louis Svarz, Architect,    Seattle, Nov. 10th, 1922.
"208 Columbia Street,
"Seattle, Washington.
"Dear Sir:
"In reference to the proposed apartment building to be erected by me on the southwest corner of Bel-

mont Ave. and Howell St. I do hereby authorize you to proceed with the drawing up of complete plans and specifications for same, for which services I agree to pay you a sum equal to four (4) per cent of the total or estimated cost of building.

"I further agree to pay you an additional sum equal to two (2) per cent of total cost of building for your supervision of same during construction.

"I further agree that in case I shall not proceed with the construction of above building by the 15th day of February, 1923, I shall then pay you a sum equal to three (3) per cent of the estimated cost of same, and this amount to apply on account should I proceed at some future date.

"It is understood that the plans and specifications shall always remain the property of the architect.

"Yours very truly,
"MRS. A. C. DUNLAP,
"(Signed) Anna C. Dunlap.
"Accepted Nov. 13th, 1922.
"By (signed) Louis Svarz,
"Architect."

Respondent claims that, when she signed the foregoing contract, it was on the express understanding that it was to have no binding effect in the event the building cost more than $86,000. This is denied by appellant, who states there was no discussion as to the costs of the proposed building, save his estimate of $92,000. After the contract was signed, appellant started to prepare the working plans for the proposed apartment building, and spent two months creating them.

After signing the contract, and before bids were called for, Mrs. Dunlap ordered various changes in the building as contemplated by the parties to the foregoing contract at the time it was signed in November, 1922. In his memorandum opinion, the trial judge set forth his reaction to the testimony of the parties on

the subject of alterations in the proposed building, as follows:

"I am satisfied that not only by the preponderance of the evidence, but by very clear evidence, that Mrs. Dunlap did order at least the majority of these changes. Mr. Svarz so testified. He is supported, too, rather glibly, by Mr. Jackson, on these matters, and so far as the mere weight of testimony is concerned, I might say it exists there. But Mrs. Dunlap, in her denials, is too broad. Her demeanor on the witness stand was not of a convincing nature. She fenced with counsel by the hour here seeking to evade a direct answer to very, very simple questions. Her own witness whom she produced, Mr. O'Connor, very clearly and definitely contradicts her in a material matter, that is, this basement question. She stated, not once, but many times, that there had been no change in the basement plans; but she had shown an original plan to Mr. O'Connor that differed quite materially from the ultimate plan that was drawn; and confirmed the plaintiff in that respect, and by confirming him, very seriously damages Mrs. Dunlap's testimony and her credibility."

We agree with the trial court's appraisal of the value of Mrs. Dunlap's testimony relative to the proposed changes. The trial court found that the changes ordered by her added approximately $10,000 to the cost of the proposed building. Like the case of *Mendel v. Yocum,* 124 Wash. 69, 213 Pac. 452, the facts in which are in some respects similar to the case at bar, this cause presents but an issue of fact as to what the agreement was.

The burden was on respondent to prove her affirmative defense that respondent and appellant entered into an express understanding that the contract entered into during November, 1922, was to be of no force or effect in the event that the proposed building cost more than $86,000. A careful consideration of

Mrs. Dunlap's testimony with reference to the oral understanding convinces us that it is no more reliable than was her testimony with regard to the proposed changes in the building. She had discussed with appellant the matter of the proposed building from January, 1922, until November of the same year. Building costs were rapidly mounting. Appellant was an architect, was familiar with her past procrastination, and likewise knew of the rapid increase in the cost of building. It is unreasonable to believe that he would risk his time and the expense of the preparation of plans by making such an oral condition precedent to his written contract for compensation.

After considering all of the testimony, we are constrained to hold that the evidence clearly preponderates against the trial court's finding that

". . . it was estimated and represented by the plaintiff as a material part of and inducement for the employment, that the entire cost of the building complete, ready for use and occupancy, would be the sum of approximately $90,000 . . . and by which representation the defendant was induced to sign the employment agreement which she would not have signed but for such representations."

The evidence clearly establishes that, in November, 1922, when the contract was entered into, appellant and respondent contemplated a proposed building, the cost of which was estimated by appellant at $92,000, but that appellant made no guarantee or contract that the cost would not exceed that sum.

February 16, 1923, respondent called at appellant's office, and notified him she would not build the apartment house. When she left his office, she took the plans with her. The written contract for the employment of appellant provides as follows:

"I [respondent] further agree that in case I shall not proceed with the construction of above building by

the 15th day of February, 1923, I shall then pay you [appellant] a sum equal to three (3) per cent of the estimated cost of same and this amount to apply on account should I proceed at some future date.''

We hold that appellant is entitled to recover from respondent three per cent of $92,000, the estimated cost of the proposed apartment house, with interest from February 16, 1923, until paid.

Reversed and remanded, with directions to enter judgment for appellant for $2,760, with interest thereon at the rate of six per cent per annum from February 16, 1923, until paid.

TOLMAN, C. J., PARKER, MITCHELL, and BEELER, JJ., concur.