[No. 32991. Department Two. April 7, 1955.]

Roy Simms, *Appellant*, v. Bob Ervin et al., *Respondents*.[1]

'Reported in 282 P. (2d) 291.

*J. H. Jahnke*, for appellant.

*Foster & Foster* and *Pebbles & Swanson*, for respondents.

HILL, J.—This is the case of the purchaser who changed his mind, and of the seller who refused to "call off the deal."

Skipping all prior negotiations, except as reference thereto may hereafter be necessary, we begin with two agents of Bob Ervin, a Buick dealer, hereinafter called the seller, at the home of Roy Simms, hereinafter called the purchaser, on the evening of February 18, 1953, they having brought with them a new Buick automobile which the purchaser and his wife had previously driven and for which they had signed a purchase order the preceding evening. Before the seller's agents left his home, the purchaser signed an "automobile conditional sales contract," by the terms of which the receipt of a down payment of thirteen hundred fifty dollars was acknowledged and the purchaser agreed to make thirty monthly payments of $89.69 each. The seller's agents took with them all copies of the conditional sales contract, it having not yet been signed by the seller, and the Buick covered by the conditional sales contract was left in the possession of the purchaser, who used it later that evening. (It should be noted that the thirteen hundred fifty dollar down payment was the amount which had been allowed by the seller for the purchaser's Ford, which had

already been left with the seller, and the papers necessary to transfer title had been executed by the purchaser and delivered to the seller's agent.)

Within an hour after the agents of the seller had left, the purchaser changed his mind, and called one of the agents and told him to tear up the contract and that the "deal was off." Neither then, nor at any subsequent time, did the seller, or any of his representatives, acquiesce in the purchaser's position that the "deal was off." The following day, February 19th, and again February 20th, purchaser saw the seller and insisted that the "deal was off," and demanded his Ford back, which demand was refused. February 21st, the purchaser and his wife called at the seller's place of business and delivered a written notice of withdrawal from the conditional sales contract, and demanded the return of the Ford, and, for the first time, claimed that they had been defrauded in the transaction. The Buick was, at that time, left by the purchaser on the premises of the seller, who thereafter placed it in storage for the purchaser and mailed him the storage ticket.

February 19th, the seller's bookkeeper and office manager, who had authority so to do, had signed the conditional sales contract on behalf of the seller, and assigned and delivered the same to the seller's bank, which bought the contract on that date. The purchaser's Ford was sold by the seller on March 4th for thirteen hundred ninety dollars.

The purchaser brought this action against the seller and the bank, asking that the "purported contract of conditional sale be decreed to be rescinded and of no further effect," and for the return of his Ford, or for its value, alleged to be sixteen hundred dollars, and for two hundred dollars for damages sustained by the wrongful and unlawful detention of said Ford.

The seller and bank, by separate cross-complaints, asked for the forfeiture of the conditional sales contract, as none of the monthly payments due thereunder had been made, and two were then past due, and elected to avail themselves of the right given them by the conditional sales contract to

keep and retain possession of the Buick, and to retain the thirteen hundred fifty dollar down payment made by the purchaser as liquidated damages.

After a trial, judgment was entered dismissing the purchaser's complaint with prejudice and granting judgment on the cross-complaints of the seller and the bank; provided, however, that the forfeiture would be inoperative if the purchaser should, within sixty days from the date of the judgment, pay the bank all sums due on the conditional sales contract. The purchaser did not avail himself of that privilege and prosecuted this appeal, but without superseding the judgment of forfeiture.

The purchaser takes a somewhat unusual position on the issue of fraud on this appeal. In his amended complaint, he charges that, because of certain false and fraudulent representations made by the seller relating to the basic cost of the automobile and the accessories, upon which he relied, he executed the contract and delivered the Ford as a credit thereon, which he would not have done if he had known of the falsity of the representations.

In his brief on this appeal, the purchaser says that the allegations and proof of fraud are material only in support of the purchaser's contention that the seller, "who has prayed for equitable relief," so conducted himself in securing the signature of the purchaser to the purchase order and the conditional sales contract that he does not come into a court of equity with clean hands and, therefore, is not entitled to any equitable relief.

Neither the amended complaint already referred to nor the purchaser's subsequent pleadings substantiate his position taken in the brief. In the purchaser's replies and answers to the cross-complaints of the seller and the bank, each of whom was asking the forfeiture of all rights of the purchaser in the Buick, and that the payments made be retained as liquidated damages, the purchaser makes no allegation of any estoppel, on the basis of fraud or otherwise, as a bar to the enforcement of the rights asserted or the relief requested in the cross-complaints.

■ However, whatever may be his present position, the trial court did not find his evidence, on the issue of fraud, to be clear, cogent, and convincing. We cannot say that the evidence preponderated against the trial court's findings, or that it should have been convinced by the evidence submitted. *Miller Lbr. Co. v. Holden* (1954), 45 Wn. (2d) 237, 273 P. (2d) 786.

■ The purchaser's claim that he was entitled to withdraw from the conditional sales contract at any time prior to its execution by the seller, which did not take place until February 19th, disregards the fact that there was a completed delivery of the car bargained for on February 18th, at the time the purchaser signed the conditional sales contract, at which time the purchaser took possession of the car. His change of mind thereafter came too late, and his attempt to "call the deal off" was ineffectual. This court stated, in *Coerver v. Haab* (1945), 23 Wn. (2d) 481, 161 P. (2d) 194, 161 A. L. R. 909:

"We adhere to the rule laid down in 12 Am. Jur. 609, § 114:

" 'If a bilateral agreement, not originally binding on one of the parties, has been performed by him, so that the other party has actually received the promised benefit, the latter is bound to perform his promise.' "

See, also, *Christofferson v. Radovich* (1945), 23 Wn. (2d) 846, 162 P. (2d) 830; *Washington Chocolate Co. v. Canterbury Candy Makers* (1943), 18 Wn. (2d) 79, 138 P. (2d) 195; *Lasswell v. Anderson* (1923), 127 Wash. 591, 221 Pac. 300; *Hamilton v. C. L. Best Gas Traction Co.* (1923), 123 Wash. 488, 212 Pac. 1077; and 1 Williston on Contracts (Rev. ed.) 229, § 78A.

The purchaser also relies on a clause in the document signed by him on February 17th, the night before he signed the conditional sales contract. This was addressed to the seller and signed by the purchaser and begins:

"Please enter my order for the following described property, to be delivered at ........................................on or about February 17, 1953,"

and then follows a description of the car which the purchaser desired to have, together with the figures which showed both the cash and the time purchase prices. The clause relied on by the purchaser is: "This order is not binding upon you [seller] until accepted and signed by an executive of your [seller's] company." The purchaser's position is that he could cancel his order before it was accepted by the seller, and that this particular document never was signed by the seller.

██ The answer to this contention is twofold. First, whatever may have been the purchaser's rights under this car purchase order, the order was superseded by the conditional sales contract signed the next night. It was the intent of the parties that all prior negotiations be integrated in that contract, and, as such, the contract became the final and only effective expression of the parties. Restatement, Contracts, 307, § 228; *Schnitzer v. Panhandle Lbr. Co.* (1942), 14 Wn. (2d) 434, 128 P. (2d) 501. Second, if we accept the purchaser's contention that the documents should be construed together, the seller waived the condition of written acceptance when he delivered the Buick to the purchaser on February 18th, and such delivery was as unequivocal an acceptance of the order as a written confirmation. *Pillsbury Flour Mills v. Independent Bakery* (1931), 165 Wash. 360, 5 P. (2d) 517; 8 P. (2d) 430; 10 P. (2d) 975. In that case, we said:

"The authorities are uniformly to the effect that, if an order for goods is given to a salesman subject to the seller's approval, the order becomes a binding contract if all of the goods ordered are shipped to and accepted by the buyer without communication by the seller to the buyer of the confirmation or acceptance of the order. . . .

". . . Though the appellant was not bound until it had in writing accepted the order, it waived the condition of written acceptance when it shipped the goods. That was as unequivocal an acceptance as a written confirmation of the order."

See, also, *Pratt-Gilbert Co. v. Renaud* (1923), 25 Ariz. 79, 213 Pac. 400; *Columbia Weighing Machine Co. v. Vaughan* (1927), 123 Kan. 474, 255 Pac. 973; *Kingman & Co. v. Wat-*

*son* (1897), 97 Wis. 596, 73 N. W. 438, and 1 Williston on Sales (Rev. ed.) 11, § 5b.

What we have heretofore said is determinative of the decisive issues on this appeal. There are certain assignments of error which, if meritorious, and we believe that some of them are, do not constitute prejudicial error and would not individually or collectively warrant a reversal. We shall, therefore, deal with them somewhat summarily. The purchaser is correct in stating that the evidence does not support the finding that he drove the Buick three hundred miles after the execution of the conditional sales contract, but quite irrespective of the distance it may have been driven subsequent to the execution of the contract, the evidence does warrant the finding "That immediately upon execution of said conditional sale contract plaintiff [purchaser] took possession of said Buick automobile," which is the decisive fact.

Appellant was likewise entitled to amend his complaint by striking out any reference to rescission even after the court had announced its decision (See Rule of Pleading, Practice and Procedure 6 (9), 34A Wn. (2d) 72), and to rely entirely on his contention that no contract was ever established. The court's refusal to permit the amendment was not prejudicial because the case was determined in the superior court, and has been determined in this court, on the basis that a conditional sales contract was established which was a valid contract, binding upon the purchaser and the seller.

Nor is the matter of attempted impeachment of one of the witnesses of any importance. Had the impeachment been permitted, it could not have conceivably changed the result. However, it seems to us that the answers of the witness deemed to be contradictory are not necessarily so, and in any event, no proper foundation was laid.

The judgment is affirmed.

HAMLEY, C. J., MALLERY, WEAVER, and ROSELLINI, JJ., concur.

May 26, 1955. Petition for rehearing denied.