[No. 38454.    Department Two.    September 1, 1966.]

KEITH MCLEOD, *Respondent*, v. GLEN KEITH *et al., Appellants*, BELLINGHAM NATIONAL BANK, *Defendant.**

*Hobart S. Dawson,* for appellants.

*Sherwood & Forrest* and *Robert B. Sherwood,* for respondent.

*Reported in 417 P.2d 861.

BIRDSEYE, J.†—For many years appellants have been in the business of distributing oil and gasoline products in the Bellingham area. In 1959, the business was incorporated and all 300 shares of stock were issued to appellants. At about the same time respondent went to work for the company and, within a month or two thereafter, the written agreement that is the subject of this lawsuit was entered into.

This contract provides that appellant husband (hereinafter referred to as appellant) would sell and respondent would buy all of the stock of the corporation,

[A]t the fixed price of $100.00 per share in accordance with the following schedule:

(1) On or before December 31, 1959, there shall be sold by Glen Keith and purchased by Keith McLeod two shares of said stock and no more.

(2) On or before February 1, 1960, Glen Keith shall sell and Keith McLeod shall purchase 48 shares of said stock.

(3) Thereafter during the calendar year 1960 no more shares of said corporation shall be sold or purchased by the parties.

(4) In each succeeding calendar year through 1964 Glen Keith shall sell and Keith McLeod shall purchase 25 shares of said stock.

(5) At any time after January 1, 1965, Keith McLeod shall have the right and option of purchasing the remaining 150 shares of stock of said corporation and Glen Keith shall be obliged to sell the same.

The contract contains no provision for forfeiture and there is no recitation that time is of the essence.

Respondent timely paid for the first 50 shares but did not pay for any stock during the years 1961, 1962 and 1963. The certificates for the stock to be purchased during these years, together with those for the shares to be bought in 1964, had been lodged by appellant with the Bellingham National Bank to be delivered to respondent upon his making payment.

---

†Judge Birdseye is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

When the contract was entered into the corporation was operating as consignee of the Union Oil Company and the venture was not particularly successful. Late in 1962, this arrangement was terminated and the company entered into a somewhat different and much more profitable, association with the Mobil Oil Company.

In May of 1964, when respondent was still delinquent in reference to his payments for 1961, 1962 and 1963, appellant advised the Bellingham National Bank to accept no further remittances on the contract. No notice of this was given to respondent. He first learned of these instructions in November of 1964 when he unsuccessfully tendered $10,000 to the bank covering his payments for the 4 years. Subsequently his attempt to exercise his option to purchase the remaining 150 shares in the corporation was also refused by appellant. He thereupon brought this action asking specific performance and praying for damages if delivery of the stock could not be had. The trial court directed specific performance and this appeal followed.

Appellant's first assignment of error is that the trial court failed to admit evidence of the surrounding circumstances and conduct of the parties, claiming that this was essential to a construction of the contract. But appellant's trial attorney (on this appeal appellant is represented by different counsel) objected when respondent sought to introduce such evidence and, consequently, appellant has no standing to make this contention. *Barash v. Robinson,* 142 Wash. 118, 252 Pac. 680 (1927).

In any event, the contract is clear and free of ambiguity and parol evidence would not have been admissible for the purpose of contradicting, subtracting from, adding to, or varying its terms. *Fleetham v. Schneekloth,* 52 Wn.2d 176, 324 P.2d 429 (1958).

Appellant complains that certain of the findings of fact are not supported by the evidence and in one or two minor respects this is true. However there is ample evidence supporting all of the material and decisive findings which, in turn, support the judgment. This is sufficient and

the presence of unsupported and immaterial findings is of no consequence. *Aura v. Markle,* 105 Wash. 654, 178 Pac. 814 (1919); *Simms v. Ervin,* 46 Wn.2d 417, 282 P.2d 291 (1955).

■ It is further contended that respondent's failure to make the payments for the years 1961, 1962 and 1963 precludes him from enforcing the agreement. Although respondent was very late with these three annual payments, appellant took no steps to either effect cancellation or to terminate the contract. There was not even a request for payment. Inasmuch as appellant remained passive until respondent made tender of the delinquent payments, he was obligated to accept them and to perform his part of the contract. *Zeimantz v. Blake,* 39 Wash. 6, 80 Pac. 822 (1905); *Coman v. Peters,* 52 Wash. 574, 100 Pac. 1002 (1909); *Keene v. Zindorf,* 81 Wash. 152, 142 Pac. 484 (1914); *In re Horse Heaven Irr. Dist.,* 19 Wn.2d 89, 141 P.2d 400 (1943).

The agreement remained in effect for either party to enforce. Had the business failed, appellant could have compelled respondent to purchase 100 shares of worthless stock; the fact that the business prospered should not preclude respondent from exercising his right to acquire these shares. Any loss to appellant because of the delinquent payments can be rectified by the allowance of interest from the due dates and the judgment of the trial court so provides.

Nor is there any injustice in allowing respondent to exercise his option to buy the remaining 150 shares of stock. This was the bargain; the parties must have known that the privilege would probably not be exercised were the business unprofitable and that the option very likely would be used if the venture succeeded.

■ In fact this is a classic case for specific performance. The subject matter of the contract is stock in a close corporation, none of which is available on the market and its value cannot be readily ascertained. In *Tri-State Terminal Co. v. Washington Wheat Growers Ass'n,* 134 Wash. 519, 524, 236 Pac. 75 (1925), this court quoted with approval the following statement of the rule appearing in a note to the case of *Rimes v. Rimes,* 22 A.L.R. 1030, 1041:

"Generally speaking, where the corporate stock which is the subject of a contract of sale of which specific performance is sought is of unknown and of not easily ascertainable value, or is unobtainable in the open market, it has been held that a suit for the specific performance thereof may be maintained, the remedy at law in such a case being regarded as inadequate."

Moreover, to deny specific performance to respondent would leave him with a one-sixth interest in a corporation controlled by appellant. From a practical standpoint this would be almost valueless.

It should be pointed out that specific performance of this contract is not unconscionable. Respondent, who assumed a real risk in 1959 in agreeing to buy a half interest in a somewhat unprofitable business for $15,000, will pay a total of $30,000 for a corporation valued by an admittedly qualified party as being worth $40,000 to $42,000. Moreover, as the trial court pointed out:

Actually, the defendant [appellant] is in the exact condition he would have found himself if the plaintiff [respondent] had performed on schedule, except that he has been deprived of the use of the monetary consideration for the intervening period of time, and an award of interest, in the eyes of the law, will cure this.

Finally, appellant claims that the contract was modified or abandoned, but there is no evidence supporting this. Respondent insisted that he was often assured by appellant that his delinquencies were a matter of no concern, and the former's wife testified to one such conversation. Appellant simply denied all of this; in fact he himself testified that the proposed stock purchase was never discussed between the parties following the execution of the contract. The trial court's conclusion that the contract remained in effect is fully justified.

The judgment is affirmed.

ROSELLINI, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

March 17, 1967. Petition for rehearing denied.