## WEST v. TINTIC STANDARD MINING CO.

No. 4621.   Decided January 14, 1928.   (263 P. 490.)

*W. I. Snyder, Vernon Snyder* and *H. Van Dam, Jr.*, all of Salt Lake City, for appellant.

*Joseph E. Evans,* of Ogden, for respondent and cross-appellant.

STRAUP, J.

The plaintiff, West, by her complaint, alleged that she, on January, 1925, and for many years prior thereto, was the owner of a certificate, No. 370, for 500 shares of the capital stock of the defendant, Tintic Standard Mining Company, a corporation; that an attorney at law, David Jenson, at Ogden, Utah, by some means unknown to her, on January 17, 1925, wrongfully obtained possession of the certificate, and on the back thereof filled out a printed blank indorsement by writing therein the name of "David Jenson, trustee," as the assignee and transferee, and forged the plaintiff's name thereto as the assignor; that with such indorsement the attorney presented the certificate to the defendant, who, at his request, negligently, wrongfully, and without authority, canceled the certificate, and in lieu thereof issued and delivered to him three certificates, one for 100 shares and two for 200 shares each, in the name of "David Jenson, trustee," and that thereafter the defendant, on or about January, 1925, wrongfully, negligently, and without authority, transferred on its books such certificates to divers persons unknown to the plaintiff; that the stock was of the value of $15 a share, and paid dividends of $1.70 a share in 1925, and about $1.50 a share in 1926, which dividends, as well as the certificate, were lost to the plaintiff. She prayed that the defendant be required to issue to her a new certificate for 500 shares in lieu of certificate No. 370, and to account to her for the unpaid dividends, or that she have judgment against the defendant for $7,500, the value of the stock, and for the unpaid dividends.

The defendant, by its answer, admitted that the plaintiff, in January, 1925, and prior thereto, was the owner of the certificate No. 370 for 500 shares; that the company paid dividends on its stock as in the complaint al-

leged; denied the alleged forgery and wrongful transfer; averred that the plaintiff, for March, June, and September, 1925, received dividends on her stock "in some other form than as issued by the defendant, and that she was thereby put on notice that somebody else was receiving dividends upon said stock, and that she was negligent in not informing the defendant of any claim she might have to said stock," and that she was "estopped by her conduct in receiving said dividends in that manner, and not claiming that there was any wrongful transfer of said stock."

The case was tried to the court. The court found all of the issues in favor of the plaintiff, except that her signature to the indorsement was not forged, but was genuine. In such respect the court found that some time in 1921 the plaintiff intrusted the certificate No. 370, with other papers, to the attorney for safekeeping; that she then signed the certificate in blank, but that he without right or authority, filled out the blank indorsement in his own name as "David Jenson, trustee," as the assignee and transferee, and thereafter, without the knowledge or consent of the plaintiff, and without authority, presented the certificate so indorsed and filled out to the defendant, who wrongfully and carelessly, and without authority, canceled it, and issued to the attorney in his name, "David Jenson, trustee," three other certificates in lieu thereof, and as in the complaint alleged; that the stock in January, 1921, was of the value of $9.30 a share; that the attorney, by cashier's checks purchased by him from a bank, paid to the plaintiff the equivalent of the dividends declared and paid by the defendant on 500 shares of stock, from 1925 to and including June, 1926; that Jenson caused to be written on such cashier's checks the word "dividend," and mailed the first two to the plaintiff in the defendant's envelopes, and the remaining checks in envelopes of the bank, approximately at the time the regular dividends of the defendant were paid; that she was not thereby put on notice that somebody else was receiving

dividends on the stock, nor was she negligent in not informing the defendant of her claim with respect thereto, and that there was not anything in her conduct in receiving the checks to estop her from claiming that the transfer of her stock was wrongful and without authority. The court rendered judgment against the defendant in the sum of $4,650, being the value of 500 shares at $9.30 a share, together with interest, $868, or a total judgment of $5,518. The defendant appeals. The plaintiff has filed a cross-appeal.

We shall first consider the questions presented by the defendant's appeal. A point is made by the defendant that, inasmuch as the court found that the signature of the plaintiff to the indorsement on her certificate No. 370 for 500 shares was genuine, and not a forgery, the complaint failed to state a cause of action. The point is not well taken. The sufficiency of a pleading is dependent upon allegata and not probata.

The further points raised by defendant go to the findings and to the law applicable thereto. The material facts of the case are that the plaintiff resided in Ogden. She had heard of, and knew, the attorney. He, prior to the transactions herein referred to, had done some notarial work for her. In June, 1921, she was about to go to California on a visit. She took the certificate for 500 shares of the Tintic Standard Mining Company, together with certificates of other companies and other papers, all in a shoe box, to the attorney, and asked him to keep them for her. The attorney prepared a separate written assignment of all of the shares of stock, a number of them in about six different companies, including the certificate No. 370 of the Tintic Standard Mining Company, by the terms of which she assigned all of such shares of stock to her four children. The shares are all specifically described in such assignment. The assignment was signed by the plaintiff and acknowledged in the presence of the attorney as a notary, and was placed in the box with the certificates. There is a con-

flict in the evidence as to whether the certificate No. 370 of the Tintic Standard stock was indorsed by the plaintiff. The trial court found that it was indorsed by her, and that the signature thereto was genuine. There is ample evidence to support such finding. We approve it.

On the back of the certificate is a printed form of assignment as follows:

"For value received, ———— hereby sell, assign, and transfer unto ————shares of the capital stock represented by the within certificate, and do hereby irrevocably constitute and appoint ——— to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises.

"Dated,————,19—.

"————————

"In presence of ————."

That, as found by the court, was signed in blank by the plaintiff. She was gone to California about four weeks. She did not call for her papers on her return. They remained with the attorney until August 30, 1924, when she had other business with the attorney, and then called for the box containing the papers. The box was then delivered to her by the attorney. She, believing that it contained all of the certificates and papers that were in the box when delivered to the attorney, took the box home, and put it away without examining the contents of the box as to each certificate or paper. From the time she delivered the box to the attorney until January 2, 1925, she received the dividends paid by the defendant, about three in number each year, and which were paid direct by the company's check drawn on Walker Bros.' bank at Salt Lake City, and mailed to her at Ogden. In March, July, and October, 1925, and in April and July, 1926, she received by mail cashier's checks of Walker Bros.' bank, on which checks was noted in typewriting the number of the "dividend" paid by "Tintic Standard Mining Company," and whether regular or extra, and the amount thereof per share. Two or three of these checks

were inclosed in envelopes bearing the name of the Tintic Standard Mining Company. The other cashier's checks were inclosed in envelopes of Walker Bros., bankers. About the last of September, 1926, she, not having received her dividend for that month, phoned to another stockholder at Ogden, and inquired of him whether he had received his September dividend. He informed her that he had received it "several days ago." Then for the first time did she examine the contents of her box, and found her certificate of Tintic Standard stock missing. All of the other papers were in the box as delivered by her to the attorney, and several other papers not belonging in the box. She immediately went to the office of the defendant at Salt Lake City, and learned for the first time what disposition had been made of her certificate of stock. She then learned that the attorney had wrongfully and without authority taken the certificate out of the box some time before the attorney had delivered the box back to her in August, 1924; that he had wrongfully and without authority filled in the blank indorsement with a typewriter by inserting in the first blank space the word, "I," in the second blank, the words "David Jenson, trustee, five hundred (500)," in the third blank the words, "the secretary of the Tintic Standard Mining Company," and in the last blank the date, "January 17, 1925," and pretended to have the signature of the plaintiff witnessed by one F. Julius Anderson, who was not present when the certificate was delivered to the attorney, or when the indorsement was signed by the plaintiff, and who was a total stranger to her, and who signed it as a witness at the request of the attorney, and, in the absence of the plaintiff, more than three years after the plaintiff had signed the indorsement.

On January 22, 1925, the attorney wrote the defendant, inclosing plaintiff's certificate No. 370, surrendering it up, and requesting that it be canceled, and three new certificates issued in lieu thereof, one for 100 shares and two for 200 shares each in the name of "David Jenson, trustee."

The attorney presented the letter and the certificate in person. The original certificate was thereupon canceled accordingly by the defendant and new certificates issued and delivered to Jenson as requested by him. These Jenson wrongfully, and without right or authority, between January 27 and October, 1925, caused to be cut up and sold, transferred them to divers persons, and indorsed them, "David Jenson, trustee," which certificates so indorsed the purchasers presented to the defendant for cancellation, who at their request issued new certificates in lieu thereof in the name of the purchasers. In the meantime, and to prevent the plaintiff from learning of the surrender and cancellation of her certificate, Jenson, after the certificates were issued to him in lieu of certificate No. 370, and until and including July 2, 1926, purchased cashier's checks at Walker Bros.' bank for the amount of dividends paid on 500 shares of the defendant's stock, six in number, and noting on them in typewriting that they were "dividends" of "Tintic Standard Mining Company." The plaintiff testified, as also did Jenson, that he had no authority to fill in the blank or to transfer or to surrender up the certificate left with him by the plaintiff. And the court so found. The evidence with respect thereto is not in conflict. The original certificate No. 370 for 500 shares was issued in the name of "Eveline E. West" as the owner; and it so stood on the books of the defendant. When the certificate with the signed indorsement pretending to have been transferred to "David Jenson, trustee," was presented to the defendant for surrender and cancellation, and new certificates issued in lieu thereof in the name of "David Jenson, trustee," no inquiry was made by the defendant with respect to the pretended transfer or as to the owner of the stock or as to the right of Jenson to transfer it or otherwise. The transfer clerk and the examiner but compared the signature of the plaintiff to the indorsement, satisfied themselves that the signature was genuine, and thereupon, without further inquiry or investi-

gation as to the authority or right of David Jenson as the lawful transferee or owner of the original certificate to transfer it, issued new certificates in lieu thereof. Nor when the certificates issued to him in the name of "David Jenson, trustee," were transferred and indorsed by him to divers persons, and on such indorsements presented by such purchasers for cancellation and new certificates issued in lieu thereof in the name of such purchasers, was there any inquiry or investigation made by the defendant as to the ownership of such certificates so indorsed and transfered by Jenson, nor as to the right or authority of David Jenson to sell, transfer, or otherwise dispose of them.

It is contended by the defendant that the plaintiff, by reason of neglect and laches, is barred recovery. This, on the evidence that in March, 1925, when she received a cashier's check on Walker Bros.' bank in payment of dividends in lieu of the personal check of the defendant therefor, and the checks being of different color, such constituted an irregularity or a circumstance as to put her on notice and inquiry that something was wrong, and that the dividends on her stock were being received by some one else. In the first place, it is to be noted that her certificate, without her knowledge or consent, was surrendered up and canceled January 22, 1925, and that 200 shares of the certificates issued to Jenson in lieu thereof were transferred by him January 27, and 200 shares April 10, 1925. In the next place, receiving cashier's checks as and for payment of dividends, and so noted on them, was not in and of itself such an irregularity or circumstance as conclusively to show negligence or laches, or an estoppel on her part. And it is very clearly shown that she was without knowledge or notice that her certificate was transferred or sold to any one, or that it had been surrendered up or canceled, until the last of September, 1926. She commenced this action by filing her complaint within a month thereafter. The findings of

the court that the plaintiff was not guilty of negligence or laches are thus approved by us.

This brings us to the real controversy, and the one chiefly urged by the defendant. It is contended that the indorsement on certificate No. 370 appearing to transfer it to "David Jenson, trustee," did not put the defendant ■ on notice that Jenson was not, but that another was, the true owner of it, nor put the defendant on inquiry to ascertain the true owner, or as to the right or authority of Jenson to surrender it up and to have it canceled, nor did the indorsement of "David Jenson, trustee," on the certificates issued in lieu of the original certificate put the defendant on notice or inquiry that Jenson had not the right or authority to transfer the certificates, or that he was not the lawful holder or owner thereof; and that plaintiff's only remedy was against Jenson for a breach of trust and of confidence reposed in him by the plaintiff. To support the contention the appellant chiefly relies on the following cases: *Brewster* v. *Sime*, 42 Cal. 139; *Thompson* v. *Toland*, 48 Cal. 99; *Fletcher* v. *Kidder*, 163 Cal. 769, 127 P. 73; *Northwestern Portland Cement Co.* v. *Atlantic Portland Cement Co.*, 174 Cal. 308, 163 P. 47; *Valleyview Consol. Gold Mining Co.* v. *Whitehead*, 66 Colo. 237, 180 P. 737; *Shattuck* v. *American Cement Co.*, 205 Pa. 197, 54 A. 785, 97 Am. St. Rep. 735; *Union Trust Co.* v. *Oliver and Oberg*, 214 N. Y. 517, 108 N. E. 809; *Beckwith* v. *Galice Mines Co.*, 50 Or. 542, 93 P. 543, 16 L. R. A. (N. S.) 723; *Smith* v. *Railroad*, 91 Tenn. 221, 18 S. W. 546; *Hickok* v. *Cowperthwait*, 210 N. Y. 137, 103 N. E. 1111, Ann. Cas. 1915B, 1002; *Grafflin* v. *Robb*, 84 Md. 451, 35 A. 971.

The cited California cases support the views of the defendant. The next six cited cases are to the effect that a blank indorsement by a record holder of a certificate of stock makes the certificate transferable by delivery, and the purchaser, or the person to whom it is delivered, may write in the blank the name of any person as assignee or trans-

feree, and lawfully transfer it, or where the record owner of stock places his certificate indorsed by himself in blank in the hands of another to dispose of it for a prescribed purpose, and the agent or the person to whom it is delivered, desregarding the direction of the principal, pledges the certificate as security for a loan to himself, or sells it, and converts the proceeds to his own use, the owner is estopped to assert title as against such a bona fide holder for value and without notice of any limitation upon the authority of the agent or person to whom the certificate was delivered and indorsed in blank by the record owner. But in these cases—and there are others of the same import—it is to be noticed that the name of the assignee or transferee inserted or appearing in the blank indorsement was merely his name as the lawful transferee without any restriction or qualification, such as "trustee" or otherwise, and without anything appearing on the certificate to indicate or give notice of any want of, or restricted, authority on the part of the transferee to sell or transfer or otherwise dispose of the certificate or to limit his apparent ownership or right to sell or otherwise dispose of it. In other words, in such case there is not anything on the record of the company, nor on the certificate, to give notice or any warning that the transferee is not the lawful owner and holder of the certificate; and hence when so presented for transfer on the books of the company, the company is justified in treating such transferee as the lawful owner, unless it otherwise has knowledge or notice to the contrary. These cases do not hold, as does California, that the addition of the word "trustee" in a certificate of stock to the name of the person to whom it is issued or transferred does not show or is not notice that he has not full right to deal with it as his own. That is very clearly pointed out in the case of *Smith* v. *Railroad,* supra, and in other cases. Some of the other cases cited by the appellant make against its contention. The case cited from Maryland partly makes

for the defendant and partly against it. There are other Maryland cases referred to. It is unnecessary to review or distinguish them, for we are of the opinion that the rule as announced by the California court is against the weight of authority. 6 Fletcher, Cyc. Corps. §§ 3838-3839; 5 Thompson, Corps. (3d Ed.) § 4050; 3 Clark & M. Private Corps. § 600A; 2 Cook on Corps. (8th Ed.) § 327; Machen, Modern Law of Corps. § 990; 7 R. C. L. p. 272.

Fletcher, supra, says:

"If a corporation has actual or constructive notice that the stock is held in trust, it becomes its duty to use reasonable diligence to ascertain whether the trustee has authority to transfer the stock before permitting the transfer to be made, and it will be liable to the cestui que trust if, without inquiry, it permits a transfer in violation of the terms of the trust. The legal presumption is that a trustee has no power to sell or transfer stock held by him in a fiduciary capacity 'and the fact that he holds it as trustee is a warning and a declaration to all the world that he is without the power of disposition unless that power is specifically given by the instrument creating the trust, or by the assent of those whom he represents' "—citing *Geyser-Marion Gold Min. Co.* v. *Stark* (C. C. A.) 106 F. 558, 53 L. R. A. 684.

He further says:

"If, by the form of the certificate or otherwise, the corporation has notice that the present holder is not the absolute owner, but holds the shares by such a title that he may not have authority to transfer them, the corporation is not obliged, without evidence of such authority, to issue a certificate to his assignee; and if, without making any inquiry, it does issue a new certificate, and the rightful owner is injured by the negligent and wrongful act, the corporation is liable to him, without proof of fraud or collusion. * * * According to the great weight of authority, the fact that stock stands on the corporate books in the name of a person 'as trustee,' or that the holder is described as a 'trustee' in the certificate, is notice both to the corporation and to the persons who purchase such stock from the trustee, or take it from him as collateral security, that he does not hold the shares in his own right, and is sufficient to put them on inquiry as to his authority to transfer them. This is particularly true where the cor-

poration or transferee has notice of the name of the cestui que trust, as where the cestui que trust is named in the certificate or on the corporate books. And, by the weight of authority, the fact that the cestui que trust is not named is immaterial."

The author cites and refers to only the California case as holding a contrary doctrine, and *Grafflin* v. *Robb*, supra, as holding that the use of the word "trustee" is sufficient to put a purchaser on inquiry, but that he cannot be held liable for misconduct of the trustee, in the absence of fraud on his part, if he could not have discovered the truth by a reasonably careful investigation of the record or other source of information.

The other texts cited are to the same effect as stated by Fletcher. The cases are there cited supporting such rule and in which the reasons for it are stated. The case of *Geyser-Marion Gold Mining Co.* v. *Stark* (C. C. A.) 106 F. 558, 53 L. R. A. 684, is a leading case on the subject. The essential facts in that case are similar to those here. The law as there applied is as pertinent here as there. We approve it and follow it.

The appellant contends that, because of our statute (Comp. Laws Utah 1917, § 878), a different rule, that of California, should be adopted in this jurisdiction. The statute is:

"Stock shall be deemed personal property, and the delivery of a stock certificate of a corporation, together with a written transfer of the same, signed by the owner, to a bona fide purchaser or pledgee for value, shall be deemed a sufficient transfer of the title as against any creditor of the transferer and all other persons whomsoever; provided, that for the purpose of voting, and of receiving dividends, and of levying and collecting assessments, and wherein the corporation is otherwise interested, the holder of record, as shown by its books, shall be treated and considered as a holder in fact, and the transferee shall have no rights or claims as against the corporation until transfer thereof be made upon the books of the corporation or a new certificate be issued to him."

We do not see wherein the statute affects or controls the question in hand. The plaintiff, as shown by the books of the defendant, was the owner and holder of record of the certificate. It was presented for surrender and cancellation by a named transferee, to whose name the addition "trustee" was attached on the face of the certificate indorsed to him, which, according to the weight of authority, was sufficient notice to the defendant that he did not hold the certificate in his own right, and that he had no power to sell or transfer it, and was a warning and a declaration that he was without power of disposition. That is also true of the certificates issued and delivered to "David Jenson, trustee," in lieu of plaintiff's certificate, and which were by him, as "David Jenson, trustee," transferred to others and surrendered up and canceled and new certificates issued by the defendant to such others. We thus, on the record, are of the opinion that the defendant is liable to the plaintiff.

Now, as to the question presented by plaintiff's cross-appeal. She thereby seeks a modification of the judgment; that, instead of awarding her a money judgment, as was done, based on the value of her 500 shares of stock as of January, 1925, when her certificate was wrongfully surrendered and canceled, the defendant, in accordance with the allegations and prayer of her complaint, be required to issue to her a new certificate for 500 shares; and, in case of its inability to do that, then to pay her the value of her certificate so wrongfully transferred and canceled. The plaintiff fully presents and discusses the matter in her brief, and cites authorities in support of her contention. The appellant makes no reply thereto, nor, on the assumption or on the theory of the defendant's liability, does it controvert or meet the plaintiff's contention so made on her cross-appeal. We thus have not the benefit of the defendant's views on the matter. We think the plaintiff is entitled to prevail. It was shown without dispute that the defendant has about 30,000 shares of its capital stock

in the treasury from which the reinstatement of the plaintiff as a stockholder can well be effected without even requiring the defendant to go in the market and acquire stock for her. In the case of *St. Romes* v. *Cotton Press Co.*, 127 U. S. 614, 8 S. 1335, 32 L. Ed. 289, the court said:

"If a corporation has by negligence canceled a person's stock, and issued certificates therefor to a third party who has purchased it from one not authorized to sell it, is the true owner bound to pursue such purchaser, or may he directly call upon the corporation to do him right and justice by replacing his stock, or paying him for its value? The weight of authority would seem to be in favor of the latter alternative"—citing cases.

The same doctrine is announced in the case of *Pennsylvania Co.* v. *Franklin Fire Ins. Co.*, 181 Pa. 40, 37 A. 191, 37 L. R. A. 780. Said the court:

"Plaintiff, on the facts, might have brought a common-law action against the defendant, and have recovered the damages sustained by the unauthorized transfer of the stock; and if the sole prayer for relief here was for a money decree such remedy by plaintiff's admission, would have been adequate, because equity, in granting the prayer, would give nothing further than the event of a common-law action; but this prayer is in the alternative. The primary relief sought by plaintiff is a restitution of the particular chattel of which the estate has been defrauded. The defendant is a trustee of the capital of all its shareholders; the evidence of such trusteeship to the contributor who has paid his money is the trustee's stock certificate; this paper defendant has illegally canceled and destroyed, thus severing all connection between the shareholder and the trustee, and depriving him of all rights and privileges as a shareholder. He does not want money, but insists on his rights under his contract of membership in the corporation, and the privileges, present and future, to which he is entitled by virtue of membership; and he asks this, not from strangers to his contract who owe him no duty in this particular, but from his trustee, who, though bound to protect his right, yet has, without authority, destroyed the evidence of it."

So too, in 2 Cook, Corps. § 327, where the author says:

"The corporation may be compelled by the court to purchase an

equal amount of stock and register it for the benefit of the cestui que trust."

The plaintiff had that remedy or the right to treat the registration of the invalid transfer as a conversion of her shares by the defendant and claim damages. 1 Machin, Corps. §§ 936, 937. The election was with the plaintiff and not the defendant. The invalid transfers deprived plaintiff of all rights as a stockholder and of all benefits and privileges as such. She is entitled, if she so elects, as she has done, to be restored to such rights.

Thus the order of this court is that the cause be remanded to the district court, with directions to modify the judgment so as to require the defendant to issue to the plaintiff a new certificate for 500 shares of its capital stock; to ascertain the amount of dividends declared by the defendant on 500 shares of its capital stock since and including the dividend declared in September, 1926, to the rendition of the judgment, and to enter a judgment for plaintiff accordingly in lieu of the judgment heretofore entered. Costs to plaintiff and cross-appellant.

THURMAN, C. J., and CHERRY, HANSEN, and GIDEON, JJ., concur.