**Richard BAGGETT, Jeanette Baggett, and Roger Eulberg, Plaintiffs and Appellees,**

v.

**CYCLOPSS MEDICAL SYSTEMS, INC., fka Inter–Med International, Inc., Defendant and Appellant.**

No. 960480–CA.

Court of Appeals of Utah.

March 27, 1997.

Jeffrey R. Oritt, A.O. Headman, and Kevin J. Fife, Salt Lake City, for Defendant and Appellant.

M. David Eckersley, Salt Lake City, for Plaintiffs and Appellees.

Before BENCH, GREENWOOD and ORME, JJ.

GREENWOOD, Judge:

Cyclopss Medical Systems (Cyclopss) appeals a grant of summary judgment in favor of Richard Baggett, Jeanette Baggett, and Roger Eulberg (collectively, the Baggetts), ordering Cyclopss to deliver shares of stock replacing those canceled by Cyclopss's corporate predecessor. We affirm.

## BACKGROUND

During their tenure as officers and directors of Inter–Med International, Inc. (Inter–Med) and its predecessor corporations, the Baggetts were issued shares of stock in consideration for their services. As of November 30, 1988, the Baggetts owned 1,778,030 shares of Inter–Med stock. After a potential purchase of Inter–Med by another corporation failed in late 1989, Inter–Med remained dormant and conducted no business for a period of time.

In April 1990, Mark Sansom, a shareholder controlling approximately 1,750,000 shares of Inter–Med, initiated efforts to revive the corporation. Mr. Sansom held a special shareholder meeting on April 16, 1990, attended by himself only, at which Mr. Sansom appointed himself sole director and president of Inter–Med. During this same meeting, Mr. Sansom caused Inter–Med to cancel the Baggetts' shares, which were still in the possession of a transfer agent engaged for the failed 1989 Inter–Med merger. The Baggetts and Mr. Sansom dispute whether the Baggetts had notice of the cancellation of their shares at that time.

Shortly thereafter, Inter–Med changed its name to Cyclopss and named new corporate directors. Mr. Sansom was not one of the newly-named directors, who ratified the corporate actions that had taken place through Mr. Sansom on April 16, 1990.

The Baggetts filed suit three years and 363 days after the cancellation of their shares, claiming the cancellation constituted a breach of contract and seeking specific performance of their contract with the corporation through restoration of their shares. The trial court granted the Baggetts' motion for summary judgment and ordered Cyclopss to deliver to the Baggetts their rightful number of Cyclopss shares.

Cyclopss appeals, claiming that (1) cancellation of the Baggetts' shares constituted conversion, at best, and not breach of contract, and therefore the Baggetts' complaint should be dismissed because it was filed beyond the three-year statute of limitations for conversion claims; (2) cancellation of the Baggetts' shares was not wrongful because Mr. Sansom was a de facto director of Inter–Med and there were questions of material fact as to whether the Baggetts acquiesced in the cancellation of their shares so as to preclude summary judgment; and (3) cancellation of the Baggetts' shares involved issues of material fact regarding whether the appropriate remedy was damages rather than specific performance as awarded by the trial court, and therefore, summary judgment was not appropriate.

On appeal, we note that summary judgment may be granted only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See K & T, Inc. v. Koroulis,* 888 P.2d 623, 626–27 (Utah 1994). "Because entitlement to summary judgment is a question of law, we accord no deference to the trial

court's resolution of the legal issues presented." *Id.* at 627.

## ANALYSIS

### I. Action for Breach of Contract

Cyclopss argues that Inter–Med's cancellation of the Baggetts' shares gives rise to a cause of action for conversion, but not for breach of contract. Because the Baggetts did not file their action within the three-year limitation period for conversion, Cyclopss asserts the Baggetts' complaint should have been dismissed. *See* Utah Code Ann. § 78–12–26(2) (1996). The Baggetts argue that the cancellation gives rise to a cause of action for breach of contract and that they timely filed their suit within the applicable four-year statute of limitations. *See* Utah Code Ann. § 78–12–25(1) (1996). Cyclopps does not dispute that the Baggetts filed within the four-year time period.

■ We conclude that although the Baggetts may have had a cause of action for conversion of their shares, they likewise may claim breach of their shareholder contract with the corporation. At common law, shares of stock were recognized as being both intangible and corporeal property. *See Coray v. Perry Irrigation Co.*, 50 Utah 70, 166 P. 672, 673 (1917); *see also Hawley v. City of Malden*, 232 U.S. 1, 11–12, 34 S.Ct. 201, 202, 58 L.Ed. 477 (1914); 11 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5097 (perm. ed. rev. vol. 1995). Thus, had the Baggetts filed within the proper statutory period, they could have pursued a claim for conversion against Cyclopss for exercising wrongful dominion over their shares while the shares were in the possession of the transfer agent.[1]

■ However, the Utah Supreme Court has recognized that a shareholder whose stock is wrongfully canceled may choose to bring an action for conversion or may " 'insist[ ] on his rights under his *contract* of membership in the corporation, and the privileges, present and future, to which he is entitled by virtue of membership.' " *West v. Tintic Standard Mining Co.*, 71 Utah 158, 263 P. 490, 495 (1928) (emphasis added) (citation omitted); *see also Robey v. Hardy*, 63 Utah 231, 224 P. 889, 892 (1924) (holding wrongful withholding of stock certificate gives rise to action in law or equity); *Coray*, 166 P. at 673–74 ("[s]hares of stock in a corporation may be the subject of conversion, or the wrongful withholding thereof a breach of contract.").

The contract between a shareholder and the corporation is represented by the articles of incorporation, in conjunction with state corporation statutes. *See Jacobson v. Backman*, 16 Utah 2d 356, 401 P.2d 181, 183 (1965) (stating "[c]onstitutional and statutory provisions that are in existence at the time the articles of incorporation are entered into become a part of the articles."). The stock certificate is merely evidence of this contract. "The certificate of the corporation for the shares, or the stock certificate, is not necessary to the existence of the shares or their ownership. It is merely the written evidence of those facts. It expresses the *contract* between the shareholder and the corporation and his co-shareholders." *United States Radiator Corp. v. State*, 208 N.Y. 144, 101 N.E. 783, 785 (1913) (emphasis added). As a result, stock "certificates" are not the same as stock "shares" and, in fact, shareholders need not actually possess share certificates to assert their shareholder rights. *See* Utah Code Ann. § 16–10a–625 (1995) (stating "[s]hares may but need not be represented by certificates[;] . . . rights and obligations of shareholders are not affected by whether or not their shares are represented by certificates."); 11 Fletcher et al., *supra*, § 5094.

---

1. "There are cases . . . in which [shares of stock] have been referred to as tangible property, in some respects at least; but it would seem that, in such cases, the court had reference rather to the physical representative of the shares, that is, to the share certificate, than to the shares themselves." 11 Fletcher et al., *supra*, § 5097. Indeed, both older and more recent cases allowing conversion claims primarily involve withholding "certificates" of shares. *See Broadcort Capital Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1192 (10th Cir.1992); *Coray*, 166 P. at 672.

The Utah Supreme Court has stated that "a corporate charter is a dual contract—one between the state and the corporation and its stockholders, and the other between the corporation and its stockholders." *Jacobson*, 401 P.2d at 183; *see also Miller v. Salt River Valley Water Users' Ass'n*, 11 Ariz.App. 256, 463 P.2d 840, 844–45 (1970) ("[A]rticles of a corporation give rise to contractual relationship among shareholders themselves, and between the corporation and its shareholders."); *Appeal of Two Crow Ranch, Inc.*, 159 Mont. 16, 494 P.2d 915, 919 (1972) ("[T]he bylaws of a corporation, together with the articles of incorporation, the statutes under which it was incorporated, and the member's application, constitute a contract between the member and the corporation."). Similarly, Fletcher states, "The relation between the corporation and its shareholders is to a large degree contractual in nature, the terms of which may be set out in the corporation's articles of incorporation, bylaws, or share certificates." 11 Fletcher et al., *supra*, § 5083.

Additionally, Delaware statutes[2] implicitly recognize the concept of a shareholder contract, evidenced by the many rights that emanate from share ownership, such as voting rights, the right to call special meetings, the right to notice of meetings, the right to dissent, proxy rights, the right to contest elections, and the right to inspect corporate books and records. *See* Del.Code Ann. tit. 8, §§ 211, 212, 220, 222, 225 (1991 & Supp. 1996). Utah has similar provisions. *See generally* Utah Code Ann. §§ 16–10a–701 to 740 (1995).

Based on this weight of authority recognizing a contractual relationship between shareholders and the corporation, we conclude the trial court correctly determined that a cause of action for breach of contract may be asserted for wrongful cancellation of shares of stock. Because the Baggetts filed within the four-year statute of limitations for breach of contract claims, the trial court did not err by refusing to dismiss the Baggetts' complaint.

## II. Wrongful Cancellation of Shares

Cyclopss's second contention is that the cancellation of the Baggetts' shares was not wrongful because Mr. Sansom was a de facto director and the Baggetts acquiesced in Mr. Sansom's actions.

To be an officer de facto one must be in actual possession of the office under claim and color of an election or appointment, and in the exercise of its functions and discharge of its duties. One must hold office under some degree of notoriety, and exercise continuous acts of an official character....

. . . .

By color of authority is meant authority derived from an election or appointment, however irregular or informal, so that the incumbent be not a mere volunteer.

2 William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 374 (perm. ed. rev. vol. 1990). Cyclopss argues that Mr. Sansom's self-appointment as sole director for Inter–Med, although "irregular" and "informal," was sufficient to confer on him the status of a de facto director. We believe, however, that Mr. Sansom's alleged status as a de facto director or officer is neither applicable nor relevant under the facts of this case.

The de facto doctrine validates the acts of officers who do not have actual authority as officers de jure. *See* 2 Fletcher et al., *supra*, § 384. The public policy promoted by this doctrine is to protect third persons relying on apparent authority because it " 'would be impracticable for third persons to deal with corporations at all, if each one must investigate the legality of the title of each corporation officer as a condition precedent to a business transaction.' " *Id.* (citations omitted). The doctrine operates in situations where the rights of third parties or creditors are injured or threatened. *See Schwab v. Frisco Mining & Milling Co.*, 21 Utah 258, 60 P. 940, 942–43 (1900).

The de facto director doctrine is not applicable, however, to transactions with

2. Cyclopss is incorporated under the laws of Delaware.

shareholders. *See Schwab,* 60 P. at 942; *Stratton–Massachusetts Gold Mines Co. v. Davis,* 222 Mass. 549, 111 N.E. 375, 377–78 (1916); *see also Dillon v. Scotten, Dillon Co.,* 335 F.Supp. 566, 569 (D.Del.1971) ("The doctrine of *de facto* directors does not apply in cases not involving third parties."). Because this case involves an internal dispute challenging Mr. Sansom's actions and the Baggetts were not relying on his asserted authority to act, the de facto doctrine is inapplicable. *See Dillon,* 335 F.Supp. at 569 (holding that "the *de facto* directors' doctrine does not apply when there is a direct challenge to a disputed office.").

■ Cyclopss asserts that even if the de facto theory does not apply, the Baggetts acquiesced in Mr. Sansom's actions and thus waived their claims of wrongful cancellation by their silence.[3] However, silence, absent a duty to speak, does not constitute waiver. *See Plateau Mining Co. v. Utah Div. of State Lands & Forestry,* 802 P.2d 720, 730 (Utah 1990). Further, failure to object immediately to a party's unlawful act does not constitute waiver of a right to bring legal action. *Id.* The defense that delay in filing suit precludes a plaintiff's cause of action only applies where the plaintiff's failure to bring suit shows a lack of diligence and causes injury to the defendant. *See Papanikolas Bros. Enter. v. Sugarhouse Shopping Ctr. Assocs.,* 535 P.2d 1256, 1260 (Utah 1975).

■ In this case, there was no evidence presented that indicates the Baggetts were not diligent in pursuing action against Cyclopss for cancellation of their shares, and, indeed, there was evidence to the effect that the Baggetts were unaware their shares had been canceled until they attempted to use the shares as collateral for a loan eighteen months after Mr. Sansom canceled the shares. Therefore, the Baggetts' failure to immediately object to the cancellation of

their shares or to promptly file suit does not, as a matter of law, constitute a waiver of their rights of action against Cyclopss for the wrongful termination of their shares.[4] As a result, the trial court was correct in granting the Baggetts' motion for summary judgment on the issue of the wrongful termination of their shares.

### III. Remedy of Specific Performance

Cyclopss argues that even if the Baggetts prevail on their breach of contract claim, there were questions of fact concerning the appropriate remedy, precluding summary judgment granting them specific performance. Further, Cyclopss asserts a trial was required to determine if an adequate legal remedy of damages was available.

■ Under the undisputed facts of this case, however, the Baggetts are entitled to specific performance of their contract, namely possession of the wrongfully canceled Cyclopss shares. Specific performance of a contract involving corporate stock is appropriate when

> the stock has no market value, and its actual value is difficult or impossible to determine, and where it cannot be purchased on the open market or easily be obtained elsewhere, or where there is uncertainty as to the real value of the stock and uncertainty in the matter of ascertaining the amount of damages.

12A William Meade Fletcher et al., *Fletcher Cyclopedia of the Law of Private Corporations* § 5634 (perm ed. rev. vol. 1993). In this case, Cyclopss itself asserts that the Baggetts' shares had no market value at the time of cancellation. Furthermore, because Inter–Med was a close corporation, the shares could not be traded on an open market, and their value was difficult to ascertain. *Cf. McLeod v. Keith,* 69 Wash.2d 201, 417

---

**3.** Although the Baggetts dispute Cyclopss's assertion that they knew of the stock cancellation shortly after it occurred, we assume they had such knowledge for purposes of reviewing the grant of summary judgment.

**4.** Cyclopss's corporate records reflect that the Baggetts' shares were canceled because they "were issued without valid consideration." However, Cyclopss does not assert on appeal that the shares were validly canceled.

P.2d 861, 864 (1966) (ordering specific performance of contract for sale of stock because "[t]he subject matter of the contract is stock in a close corporation, none of which is available on the market and its value cannot be readily ascertained.").

Most importantly, the Utah Supreme Court has held that a shareholder whose shares have been wrongfully canceled is entitled to have the specific, wrongfully terminated shares restored. *See West v. Tintic Standard Mining Co.*, 71 Utah 158, 263 P. 490, 495 (1928).[5] The court in *West* stated that when faced with a decision of bringing an action for either damages or specific performance,

> [t]he election was with the plaintiff [shareholder] and not the defendant [corporation]. The invalid transfers deprived plaintiff of all rights as a stockholder and of all benefits and privileges as such. She is entitled, if she so elects, as she has done, to be restored to such rights.

*Id.* In addition, where the shares have no market value, specific performance is justified because the only value remaining in the canceled shares is represented by shareholder rights derived from the share contract. In a situation such as this where the shares are financially valueless but there remains some intrinsic value in the corporation as a potential going concern, the voting rights of shareholders—particularly controlling shareholders such as the Baggetts—may be very valuable. *See ER Holdings, Inc. v. Norton Co.*, 735 F.Supp. 1094, 1103 (D.Mass.1990) (holding that damages cannot compensate for loss of contractual right to vote as shareholder). Specific performance may be especially appropriate in this case as the Baggetts apparently view the shares as a means of control or influence over Cyclopss, and not merely as instruments of financial investment.[6] That view is reflected in the prayer for relief in the Baggetts' complaint, seeking specific performance as their sole remedy. Therefore, we determine that the trial court acted properly in awarding the Baggetts specific performance of their shares.

## CONCLUSION

We conclude that the Baggetts' breach of contract claim, which was timely filed, was a proper cause of action for Cyclopss's wrongful cancellation of their shares. Furthermore, the unilateral cancellation of the Baggetts' shares cannot be validated under the theory that Mr. Sansom acted as a de facto director or that the Baggetts acquiesced in his actions, so as to preclude their claim for breach of contract. Finally, we agree with the trial court that specific performance of the wrongfully canceled shares is the appropriate remedy, as a matter of law. We therefore affirm the trial court's grant of summary judgment in favor of the Baggetts.

BENCH and ORME, JJ., concur.

---

**5.** We note that under Delaware law, Cyclopss's state of incorporation, a shareholder may elicit the aid of the judiciary to force a corporation to issue or reissue share certificates when that corporation refuses to do so. *See* Del.Code Ann. tit. 8, § 168 (1991).

**6.** Specific performance of contracts for shares of stock has been granted in situations where the "value" of the shares represents interests for the shareholder beyond mere financial investment. For example, in *Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96 (3d Cir.1986), the court granted specific performance of a contract for purchase of stock in an attempted acquisition because the purchaser did not want the corporation or its stock for its "financial performance," but instead desired to acquire the corporation to obtain control of its certificate of authority for uninterrupted freight shipping. *Id.* at 103.